**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles THOMAS, a/k/a Reginald Gardner, and Melvin Cooper, Jr., Defendants–Appellants.**

**Nos. 89–3423, 89–3508.**

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1990.

Decided July 9, 1990.

As Amended July 27, 1990.

---

Eric J. Klumb, Maxine A. White, Asst. U.S. Attys., Milwaukee, Wis., for U.S.

Charles O. Blaha, Milwaukee, Wis., for Charles Thomas.

Debra J. Patterson, Wauwatosa, Wis., for Melvin Cooper, Jr.

Before BAUER, Chief Judge, FLAUM, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

PER CURIAM.

The district court departed upward from the applicable Guideline range in the sentencing of defendants Charles Thomas and Melvin Cooper. We find that the court did not provide adequate, detailed reasons for departure, and did not justify the extent of

departure by linking it to the structure of the Guidelines. Accordingly, we vacate the sentences and remand for resentencing.

The sentences at issue arise out of two different convictions. The first arose when, in early November 1988, Milwaukee police officers stopped a car in which Charles Thomas was a passenger. Thomas, a convicted felon, was seen holding a handgun between his legs which he then dropped on the back seat floor of the car. Thomas was charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) & 924(a)(2), but was released pending trial.

The second conviction arose out of events on April 9, 1989. On that date, a confidential informant told the Milwaukee Police Department that members of the Brothers of Struggle Gang ("BOS") were using 2507A West Atkinson Avenue as a drug house to sell cocaine. The informant identified several members of the BOS gang, including defendants Cooper and Thomas, and stated that the members of the gang were heavily armed with sawed-off shotguns and automatic weapons. The informant reported that during the preceding week, he had observed Cooper at the house handling a TEC–9 pistol while another gang member held a shotgun and checked out potential drug customers. Finally, the informant stated that a lookout was normally stationed in the front window, armed with a sawed-off shotgun or automatic weapon.

Several police officers proceeded to the house in street clothes and an unmarked car. As the officers approached the house, they observed Cooper standing near the second floor window holding a sawed-off shotgun. Cooper was watching the officers and pointing the gun in their direction. The officers, with guns drawn, ordered Cooper to drop the gun. After a second warning from the officers, Cooper opened the window and threw the shotgun out. A few seconds later, Cooper threw a plastic bag from the window containing approximately 22.5 grams of cocaine.

After the officers called for additional assistance, they proceeded to the entrance of the upper unit. The officers forcibly entered the house where they found Cooper and Thomas sitting on the couch in the living room. The police searched the premises and seized an Intratec–9 semiautomatic pistol loaded with 27 rounds of ammunition, a silencer threaded to fit the pistol and boxes of ammunition for several types of weapons. The officers also seized drug paraphernalia, including a box for a gram scale, a hand sifter, a bottle of inositol (used as a cutting agent for cocaine), plastic bags, and other packaging material. The house was sparsely furnished and fit the Milwaukee Police's drug house profile.

In June 1989, Thomas and Cooper were charged in a five-count superseding indictment. They were charged with possession of unregistered firearms in violation of 26 U.S.C. §§ 5861(b) and 5871, possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and use of a firearm in relation to a drug trafficking crime contrary to 21 U.S.C. § 924(c)(1). In addition, Thomas was charged with a second count (in addition to the November charge) of being a felon in possession of a firearm contrary to 18 U.S.C. §§ 922(g)(1) and 924(a)(1)(D).

Thomas pleaded guilty to one count of being a felon in possession of a firearm, the narcotics charge and the use of a firearm in relation to a drug trafficking crime. Cooper pleaded guilty to possession of an unregistered firearm, the narcotics charge and the use of a firearm in relation to a drug trafficking crime. Pursuant to a plea agreement, the government dropped the remaining charges.

The presentence report calculated Thomas' base offense level for possession of cocaine with intent to distribute at 12. Thomas was being sentenced for more than one offense, so his offense level was increased by 2, for a combined offense level of 14. Finally, because Thomas accepted responsibility for all the offenses, his base offense level was decreased by 2, leaving the total offense level at 12.

Thomas' criminal history consisted of two prior offenses, for which he received a score of 4. Thomas was on parole at the

time, so he was assessed 2 additional points. Another point was then added because Thomas had been released from custody less than two years before the commission of the offenses for which he was being sentenced. His total criminal history score was thus 7, placing him in a criminal history category of IV. For an offense level of 12 and criminal history category of IV, the Guidelines indicated a sentencing range of 21 to 27 months. In addition, Thomas' conviction for use of a firearm in relation to a drug trafficking crime, a non-Guidelines offense, carried a mandatory, consecutive, five-year term of imprisonment.

Cooper's base offense level for possession of an unregistered firearm was 12. He received a 1 point increase because the firearm was stolen and a 4 point increase because the firearm had an unregistered silencer. His criminal history category was I, yielding a sentencing range of 24 to 30 months. In addition, Cooper's conviction for use of a firearm in relation to a drug trafficking crime carried a mandatory, consecutive, five-year term of imprisonment.

The two defendants were sentenced separately. At Thomas' sentencing hearing, the government requested an upward departure of about 48 months based on his admissions that he was a member of a gang and had sold cocaine on occasions aside from the date of the charged offense. The government introduced evidence of the gang related activities and its dangers to the community. The court then made its findings:

> I've talked about these guidelines in a lot of cases and this is just another example of their total inadequacy in addressing the serious problems in ... urban communities, [in] Milwaukee, [and] in our state. So I find, first of all, that the guidelines ... totally, completely underestimate the seriousness of this particular set of criminal charges....
>
> Well, I intend to significantly depart from the guidelines. I think it's a case that a message should be sent to others who are thinking about this kind of gang

activity. A message should be sent to people who run drug houses and peddle this terrible stuff to others which is being used to destroy the lives of people. A message should be sent to people who possess these weapons of destruction. A message should be sent to gang members that very serious consequences will fall if you persist in that kind of activity. I mean, unless something is done here about this, we're just going down the road to destruction.

> And, Mr. Thomas, you've earned the sentence I'm going to give you here. Your prior convictions, being on parole, one thing after another.

Without further comment, the court sentenced Thomas to the maximum sentence on each count, all consecutive, totalling 30 years imprisonment. The departure on the Guidelines offenses was from a range of 21 to 27 months to a sentence of 25 years.

At Cooper's sentencing hearing, the government asked for an upward departure of 24 to 30 months. The court incorporated its remarks made during Thomas' hearing as reasons for also departing upward in Cooper's sentence. In addition, the court based departure on the following statement:

> I'm going to do what I think is the right thing to do in these cases. And here we have this very terrible situation, violent street gang, drug houses in the inner city which cause fear and intimidation and no regard to everybody else, the cocaine in the house, the arsenal of weapons.
>
> Now, I don't intend to give Mr. Cooper a sentence that is nearly as severe as the sentence I imposed on Mr. Thomas. Very significant difference is the fact that Thomas had a prior record.

Cooper was sentenced to a total of 15 years. The departure on the Guidelines offense was from a range of 24 to 30 months to a sentence of 10 years.

We are puzzled by the district court's actions. The broad grounds on which a sentencing court may depart from the Guidelines are clearly established. "A sentencing court is not generally allowed to depart from a Guidelines sentencing range

unless the court finds aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines." *United States v. Schmude*, 901 F.2d 555, 558–59 (7th Cir. 1990) (citing 18 U.S.C. § 3553(b)). The statements by the district court do not reflect an attempt to follow this statutory requirement: the court did not discuss the structure of the Guidelines and why they failed to reflect the aggravating factors in this case.

■ The district court's statements in this case closely resemble those rejected as inadequate in *United States v. Lopez*, 875 F.2d 1124 (5th Cir.1989). In that case, the defendant was found with seven machine guns, four rifles, six shotguns and a .357 Magnum pistol, all concealed. The district judge, sentencing the defendant for only one count of possession of an unregistered firearm, departed upward, stating:

> The guidelines themselves are weak and ineffectual with respect to this crime. It is apparent to the court that the calculations of the offense level, together with the criminal history category does not reflect the conduct in which the Defendant Lopez engaged, nor does it reflect, most importantly in the court's view, the potential harm to the public.... The court believes that this defendant's conduct presents a bigger picture of harm to the public and bigger picture of criminality than ... does the breakdown of points awarded and offense level.

The court concluded, "The guideline absolutely gives away this offense." *Id.* at 1126. The Fifth Circuit vacated the sentence, holding that "a sentencing court's personal disagreement with the guidelines does not provide a reasonable basis for sentencing." *Id.* at 1127. "Without a more particularized rationale, we cannot gauge the reasonableness of this departure...." *Id.* The circuit court agreed that departure might be warranted under these facts, but held that to depart, the district court must find more particularized factors that had not been adequately considered by the Guidelines. The Fifth Circuit's holding in *Lopez*, is applicable to this case. A finding by the district court that the Guidelines direct a sentence that is different than one the court would otherwise give is not grounds for departure.

By closely parsing the district court's statements it is possible to discover three, more specific grounds for departure. First, it based its departure on a finding of the Guidelines' "total inadequacy in addressing the serious problems in ... urban communities, [in] Milwaukee, [and] in our state." That is, the court reasoned that the Guidelines did not adequately account for regional differences. The court also departed based on its feeling that a "message should be sent to others who are thinking about this kind of gang activity," i.e., the Sentencing Commission failed to adequately consider the deterrent effect of punishment. Finally, the court discussed the specifics of the defendant's gang activities, finding that these gang activities might indicate a recidivist tendency that is not reflected in the defendants' criminal history categories or a potential for violence not normally associated with the crimes charged.

■ The first two grounds for departure are inappropriate. Courts are not free to base sentencing on purely local conditions such as the degree of violence in Milwaukee. "Congress sought *uniformity* in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders." Guidelines Manual at 1.2. Criminals in large urban areas should not be sentenced to longer terms than criminals elsewhere. In addition, sentencing based on locale is not based on the relevant conduct of the offender. *See* § 3B1.3; *United States v. Missick*, 875 F.2d 1294, 1302 (7th Cir.1989); *United States v. White*, 888 F.2d 490, 496 (7th Cir.1989). Courts are also not free to depart based on the need for general deterrence. *See Lopez*, 875 F.2d at 1126. It would be difficult to imagine a finding that the Sentencing Commission failed to adequately consider the general deterrent effect of the criminal law. *See* Guidelines

Manual at 1.3 (Sentencing Commission's discussion of deterrence). District courts must justify their departures by reference to factors particular to the defendant that the Guidelines inadequately considered.

■ Involvement in gang activities might provide more fruitful grounds for departure, but the district court insufficiently articulated reasons for departure based on gang affiliation. When deciding to depart, the district judge must "provide articulable reasons, of a type contemplated by the Act and the Guidelines, and based on a sufficiently sound factual foundation to justify a departure from the Guidelines." *United States v. Miller*, 874 F.2d 466, 471 (7th Cir.1989). The court must state specific reasons for departing, preferably tying the reason for and extent of departure to a circumstance inadequately considered by a specific section or portion of the Guidelines. *United States v. Carey*, 895 F.2d 318, 325–26 (7th Cir.1990); *United States v. Mendoza*, 890 F.2d 176, 180 (9th Cir.1989). The factual contexts which departures have been upheld illustrate the type of factors envisioned by the Sentencing Commission. *See, e.g., Schmude*, 901 F.2d at 559 (departure because prior conviction for same offense not considered by § 4A1.3); *United States v. Williams*, 901 F.2d 1394 (7th Cir. 1990) (departure because § 2B3.1(b)(2)(C) did not adequately consider the risk of harm arising from possession of a firearm while under the influence of drugs); *United States v. Ferra*, 900 F.2d 1057, 1061 (7th Cir.1990) (departure because defendant continued to sell narcotics after arrest). Absent a sufficient, particularized statement by the district court of the reasons for and extent of the departure, we must vacate the sentence and remand the case for the district court to satisfy the requirement. *See, e.g., Ferra*, 900 F.2d at 1064; *Carey*, 895 F.2d at 325.

■ At sentencing, the government offered evidence that the defendants were members of a violent street gang whose business was trafficking in illegal narcotics. The evidence strongly indicated that the BOS gang, of which both defendants were members, has contributed greatly to the urban drug and crime problems in the communities in which it operates. The government argued that this evidence warranted departure under § 5K2.9 for criminal purpose. This section states that "[i]f the defendant committed the offense in order to facilitate or conceal the commission of another offense, the court may increase the sentence above the guidelines range to reflect the actual seriousness of the defendant's conduct." While the government failed to point to a specific offense that the charged crimes facilitated, the government argued that the possession of the firearms generally facilitated the gang's violent mission.

The district court did not, however, say whether it accepted or rejected the government's reasoning. It did not cite § 5K2.9 when giving its reasons for departing. Nor did it cite to any portion of the Guidelines, discuss the particulars of the Guidelines' structure, or indicate the particular factors of this case that the Guidelines failed to consider. Moreover, a factual finding that gang activities are terrible is insufficient to support a holding that the Guidelines failed to adequately consider the effects of such activities. The Guidelines provide for enhancements or departures in many specific circumstances that might adequately consider the problems associated with gang activities. For example, departure is warranted where death or physical injury is a result of the crime. §§ 5K2.1 & 2. Criminal history categories are enhanced for defendants with prior convictions. § 4A1.1. Leaders of gangs can receive enhancements for playing an aggravating role in the offense under § 3B1.1. The simple statement that gang activity is terrible does not point to where the Guidelines insufficiently take the problems into account. The district court is obliged to provide specific, articulable reasons for departure, explaining why the Guidelines failed to adequately consider some aspect of this case, and none were provided here.[1]

---

1. This is not to say that, on the evidence presented by the government, departure may not be warranted. Departure under § 5K2.9 for criminal purpose may be appropriate. Alterna-

■ The significantly differing departures for Thomas and Cooper is also of some concern. The district court based its departure for Thomas on the fact that he had several prior convictions. These prior convictions, however, had already been accounted for in determining his criminal history category. The district court made no finding that the criminal history category inadequately reflected Thomas' prior convictions. The government offers no basis for such a finding. It is well established that departure is warranted only where there is an "aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission...." 18 U.S.C. § 3553(b). *See Schmude*, 901 F.2d at 559 (prior conviction does not support departure because it was included in the criminal history category); *United States v. Franklin*, 902 F.2d 501 (7th Cir.1990). We fail to understand how the district court could base an upward departure on the existence of a prior criminal record with no finding that the Guidelines underestimated the seriousness of prior conviction.

■ Even if the district court had adequately stated its reasons for departure and we had found that the facts supporting the departure were not clearly erroneous, the district court would still have failed to give reasons justifying the extent of departure. Once the court has made the decision to depart, "the judge should compare the seriousness of the aggravating factors at hand with those the Commission considered." *Ferra*, 900 F.2d at 1062. "Reasonableness [ ] implies that some effort must be made to fashion the degree of departure to correspond to the number and the nature of the factors which warrant departure." *Schmude*, 901 F.2d at 560. "Unless there is discipline in departure, [ ] sentencing disparity will reappear," and courts, therefore, should, where possible, seek to "link the extent of departure to the structure of the guidelines." *Ferra*, 900

F.2d at 1062. The district court appears to have made no meaningful attempt to perform such a procedure. Indeed, before oral argument, the government acknowledged that the extent of departure was not adequately linked to the structure of the Guidelines and conceded that remand was necessary.

With respect to the extent of departure based on Thomas' prior convictions, the Guidelines provide a specific mechanism for departing from the criminal history category. *See* § 4A1.3 (policy statement). Under this mechanism, "the courts [are to] use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable." *Id.; Ferra*, 900 F.2d at 1062. Again, the district court did not make an attempt to determine which criminal history category was appropriate for Thomas.

We are distressed by the failure of the very able and experienced district court to follow the clear mandate of the Guidelines and of this Court. Judges are not free to reject the Guidelines out of hand, nor are they at liberty to impose personalized sentencing agendas. The Guidelines, over which there has been much scholarly debate, have been found to be a constitutional act of Congress and must be followed. The sentences are VACATED and the case REMANDED for resentencing comporting with the Guidelines and our reflecting precedents. Circuit Rule 36 shall not apply.

---

tively, the government urges on appeal departure under § 5K2.15, because it claims the gang violence amounts to terrorist activity. Departure could also be based on a ground not listed in § 5K2 such as a finding that the Guidelines

did not adequately consider the greater potential for violent use of the firearms by gang members when acting in concert. We do not make such a determination; the district court is free to do so on remand.