**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronald L. SCOTT, Defendant–Appellant.**

No. 89–3512.

United States Court of Appeals,
Seventh Circuit.

Argued May 11, 1990.

Decided Sept. 28, 1990.

---

R. Jeffrey Wagner and Maxine A. White, Asst. U.S. Attys., Office of U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Mark A. Pumpian, Styles & Pumpian, Milwaukee, Wis., for defendant-appellant.

Before CUMMINGS, EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Ronald L. Scott pleaded guilty to a two-count indictment that charged him with various firearms possession offenses. In sentencing Mr. Scott, the district court departed upward substantially from the sentencing range provided in the Federal Sentencing Guidelines. On appeal, Mr. Scott challenges both the district court's basis for departing from the guidelines and its methodology in determining the degree of departure. For the following reasons, we vacate and remand for resentencing.

I

BACKGROUND

A. *Facts*

A confidential informant for the Bureau of Alcohol, Tobacco, and Firearms made a purchase of approximately thirty grams of cocaine from an unidentified male at the residence of Mr. Scott in Milwaukee, Wisconsin. The police then obtained a search warrant and conducted a search of the residence. There they found a loaded

sawed-off shotgun in a bedroom closet. Approximately two weeks later, Mr. Scott was arrested and charged in a two-count indictment that alleged violations of 18 U.S.C. § 922(g)(1) (convicted felon in possession of a firearm) [1] and 26 U.S.C. § 5861(d) (possession of an unregistered firearm). After Mr. Scott had been arrested and read his *Miranda* rights, he gave a statement to police in which he admitted his "association" with the Brothers of Struggle (BOS), a Milwaukee street gang. He also described several visits he made to drug houses where he had seen other dangerous weapons.

Mr. Scott pleaded guilty to both counts and was released on bail. Between the time of Mr. Scott's guilty plea and sentencing, he submitted to two urinalysis tests, one of which proved positive for the presence of marihuana and the other for both marihuana and cocaine. Mr. Scott also failed to appear as scheduled for sentencing on September 5, 1989; a warrant was issued for his arrest. On October 6, 1989, Mr. Scott reportedly was present with a BOS member at a local tavern during a shootout. He remained at large until October 10, 1989, when he voluntarily surrendered to federal agents.

### B. *Sentencing*

A presentence report was prepared in accordance with the Federal Sentencing Guidelines. The guidelines pertinent to Mr. Scott's offense were sections 2K2.1(a) (Receipt, Possession, or Transportation of Firearms and Other Weapons By Prohibited Persons) and 2K2.2(a) (Receipt, Possession, or Transportation of Firearms and Other Weapons in Violation of the National Firearms Act). [2] Under section 2K2.1(a), Mr. Scott's offense level was 9. Under section 2K2.2(a), his offense level was 12. Because the two counts under which Mr. Scott was charged involved substantially the same harm, the court applied only the higher offense level. Guidelines §§ 3D1.2(b), 3D1.3(a). Thus, Mr. Scott's adjusted offense level was 12. The probation officer also recommended that Mr. Scott be awarded a two-level acceptance of responsibility adjustment. This reduced his total offense level to 10. Mr. Scott was placed in criminal history category III. His placement in category III, combined with his offense level of 10, yielded him a guidelines range of 10–16 months. The presentence report set forth a list of "Factors That May Warrant Departure." Presentence Report at 17. The first of these factors was a pending misdemeanor cocaine charge, which the probation officer stated could provide the basis for an upward departure based on the inadequacy of the defendant's criminal history score. *Id.; see* Guidelines § 4A1.3 (Policy Statement). [3] The other factors mentioned in the presentence report were Mr. Scott's drug use while on bond and his association with gang members and drug dealers. The probation officer suggested that these activities might provide the basis for a departure under section 5K2.0 [4] on

---

1. Mr. Scott had a prior felony conviction for distribution of cocaine and possession of cocaine with intent to distribute.

2. Both sections 2K2.1 and 2K2.2 were amended effective November 1, 1989. Without objection or comment on the matter from either party, Mr. Scott was sentenced on November 7, 1989 based on the guidelines in effect at the time of the commission of the crime (April 14, 1989) rather than the date of sentencing. Although the general rule provided by statute is that the defendant is to be sentenced under the guidelines "in effect on the date the defendant is sentenced," 18 U.S.C. § 3553(a)(4), in this case application of the amended guidelines would have resulted in Mr. Scott's receiving a higher base offense level. *See* Guidelines §§ 2K2.1(a)(1), 2K2.2(a)(1) (amendment effective on November 1, 1989 increased the base offense

level for violations of 26 U.S.C. § 5861 from 12 to 16). The government does not argue that the November 1, 1989 amendments apply in this case. Thus, our analysis is based on the versions of sections 2K2.1 and 2K2.2 in effect on April 14, 1989, when the crime was committed.

3. Section 4A1.3 provides that a court may consider departures "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes."

4. Section 5K2.0 incorporates and clarifies the statutory authorization for courts to depart in cases where " 'there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by

the grounds that they were aggravating factors that had not been taken into account by the Sentencing Commission. Presentence Report at 17.

On November 7, 1989, the defendant appeared before the district court for sentencing. Although Mr. Scott initially had filed several objections to the presentence report, at the sentencing hearing he withdrew all of his substantive objections, including his objection to being characterized as a member of the BOS gang. In sentencing Mr. Scott, the district court made a substantial upward departure from the 10–16 month guideline range that initially was calculated and sentenced the defendant to two concurrent terms of five years each (60 months). This sentence reflected an upward departure of 275% over the top end of Mr. Scott's guideline range. The district court explained its rationale for the upward departure as follows:

Well, for the last year I have been screaming and yelling about these sentencing guidelines almost every occasion. Now, here we have a case where according to the sentencing guidelines I should impose a sentence of between 10 months and 16 months in prison. I talked about this in 30, 40, 50, 60 cases, I don't recall how many, that these guidelines are ... fraught with inadequacies. They don't and they can't give the Judge the power to do what really ought to be done in these cases.

Now, last week I had a, I think it was last week I had ... somebody ... from the Brothers of Struggle gang and the guidelines called for three years or four years or something like that and I gave him 30. I'll tell you why these guidelines, they don't work. Here Mr. Scott is convicted of being a felon in possession of a gun. And what that means is we go to the guidelines and the offense severity rating and for violating that offense, for violating that federal statute which is part of the National Firearms Act, a level 12 under the grid is established as the proper offense severity rating.

Now, that means that someone who is a 60 year old lawyer ... who gets convicted of income tax evasion, five years after he's been convicted is found to ... have a gun, let's say, in his home, all right. He violates the law. He's a felon, he's in possession of a gun. He under the guidelines has an offense severity rating of 12.

Mr. Scott had a prior conviction. It's a drug case. He is found in possession of a gun. His gun's a sawed off shotgun. He's a member of the Brothers of Struggle. Violent street gang. He's running in and out of more drug houses here according to the report than you can shake a stick at. A literal arsenal of weapons are found in these drug houses. But he gets treated the same way under the guidelines as the 60 year old ... lawyer. They're both felons in possession of a gun.

Now, you tell me that that's a fair and a just way to adjudicate criminal cases. I've been on the bench for 16 years, state court six years and ten years here. And this system is, maybe they had a worthwhile objective at one time to get rid of disparity in sentencing, but not [to] allow the Judge to or to so hamstring a Judge that you can't really use your discretion the way you think it ought to be used is wrong. It's been wrong in a lot of other cases and wrong in this case.

I think that a sentence in the range of 10 to 16 months here would be totally, absolutely inadequate. It would send the wrong message to the community and to gang members and to people who get involved in the dangerous mix of drug houses, cocaine, sawed off shotguns and violence. So in this case I, Number One, determine that in formulating the guidelines the sentencing commission did not adequately take into consideration the different circumstances under which felons can possess guns as evidenced by the example that I've just

the Sentencing Commission in formulating the guidelines.'" Guideline § 5K2.0 (Policy State-

ment) (quoting 18 U.S.C. § 3553(b)).

used. And, accordingly, the possession of guns, a sawed off shotgun by a felon under circumstances such as present in this case would justify doubling the offense severity level under the guidelines.

I also find that the criminal history understates Mr. Scott's criminal background because it does not take into account his drug use and the fact that he failed to appear in court for sentencing at the appointed time. Accordingly, ... and I still have to work somewhat with the guidelines here, even fashioning this sentence, but I find then that he is more appropriately placed in offense level 24 rather than 12, that he should be in criminal history category three, that he's entitled to the two point reduction that Mr. Freitag gave to him which moves him to level 22.

And even going through this the most I can give him is, rounded off, five years. And I think you should know, Mr. Scott, that if I wasn't required to adhere somewhat to the guidelines in this case I would give you more time than I'm giving you.

R. 25 at 34–37.

## II

## ANALYSIS

Mr. Scott advances two possible bases for error in the district court's departure from the guidelines range. First, he contends that the district court erred in basing its departure on factors already taken into account by the guidelines. His second argument is that the district court did not follow the procedures prescribed in *United States v. Miller*, 874 F.2d 466 (7th Cir. 1989), for making an upward departure based on the inadequacy of the criminal history category. We consider these arguments in turn.

### A. Departure Based on Factors not Adequately Taken into Account by the Guidelines

Initially, we note the similarity between the case before us and a case recently decided by this court. In *United States v. Thomas*, 906 F.2d 323 (7th Cir.1990), the court reviewed substantial upward departures imposed by the same district court on defendants who were members of the BOS gang and who pleaded guilty to possession of firearms (including a sawed-off shotgun) and narcotics. In *Thomas*, this court vacated the sentences on the ground that the district court did not adequately link its departure to the structure of the guidelines. As noted in *Thomas*, " '[a] sentencing court is not generally allowed to depart from a Guidelines sentencing range unless the court finds aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines.' " *Id.* at 326–27 (quoting *United States v. Schmude*, 901 F.2d 555, 558–59 (7th Cir.1990) (citing 18 U.S.C. § 3553(b))).[5] " '[A] sentencing court's personal disagreement with the guidelines does not provide a reasonable basis for sentencing.' " *Id.* at 327 (quoting *United States v. Lopez*, 875 F.2d 1124, 1126 (5th Cir.1989)). Moreover, a decision to depart from the guidelines must be supported by " 'articulable reasons, of a type contemplated by the Act and the Guidelines, and based on a sufficiently sound factual foundation to justify a departure from the Guidelines.' " *Id.* at 328 (quoting *Miller*, 874 F.2d at 471). Beyond the decision to depart, we also review the extent of the departure. "The degree of departure must be linked to the structure of the Guidelines." *United States v. Gaddy*, 909 F.2d 196, 199 (7th Cir.1990) (citing *United States v. Ferra*, 900 F.2d 1057, 1062 (7th Cir.1990)). "We give deference to the district court's findings on what degree of departure is appropriate so long as it adequately reflects the structure of the Guidelines." *Id.* (citing *Schmude*, 901

---

**5.** However, as this court also has noted, the fact that a particular factor is listed as part of a specific offense characteristic does not necessarily preclude a departure based on that factor if the circumstances are so unusual that the district court can conclude that the guideline level attached to the particular factor is inadequate. *See United States v. Jordan*, 890 F.2d 968, 978 (7th Cir.1989); Guideline § 5K2.0 (Policy Statement).

F.2d at 560).[6]

Having examined the record in this case, we believe that the district court, while verbalizing an obligation to "work somewhat with the guidelines," R.25 at 37, actually failed to justify its substantial departure when it did not articulate clearly the reasons for its departure and did not link these reasons to the structure of the guidelines. *See Thomas*, 906 F.2d at 328. First, the record reveals that the sentence imposed by the district court reflected at least in part a "generalized dissatisfaction with the Guidelines."[7] *United States v. Jordan*, 890 F.2d 968, 978 (7th Cir.1989); *see Thomas*, 906 F.2d at 327. Obviously, such dissatisfaction is not a "reasonable basis for sentencing." *Lopez*, 875 F.2d at 1126. It also appears that the district court attempted to justify its departure by comparing Mr. Scott's case to that of a hypothetical senior attorney who once had been convicted for tax evasion and later was found to have a gun in his home. A district court cannot justify a departure of the magnitude imposed here simply by attempting to contrast the defendant with the court's own perception of the weakest hypothetical case that might qualify for the same guideline range as the defendant.

6. As we have noted, however, in fulfilling this task of analysis and explanation, district courts are not required to "'incant the specific language used in the guidelines.'" *Jordan*, 890 F.2d at 977 (quoting *United States v. De Luna–Trujillo*, 868 F.2d 122, 124 (5th Cir.1989)).

7. The fact that the district court simply doubled the offense level without offering a reasoned justification for the extent of departure also strikes us as arbitrary.

8. An examination of the applicable guideline, section 2K2.1, also suggests that use of such a comparison is particularly inappropriate in this case. The version of section 2K2.1 under which Mr. Scott was sentenced specifically authorizes a decrease in the offense level if the firearm was possessed "solely for sport or recreation." § 2K2.1(b)(2). The background commentary to the section indicates that "[i]ntended lawful use, as determined by the surrounding circumstances, is a mitigating factor." Thus, it appears by implication that the base offense level under section 2K2.1 incorporates a presumption of unlawful use, and that evidence of intended lawful use may reduce the base offense level by negating the presumption of unlawful use. *See United States v. Robinson*, 898 F.2d 1111, 1120

The weakest possible case might qualify for a downward departure. However, it does not necessarily follow that a stronger case would qualify for an upward departure.[8] We cannot accept the district court's assertion that the Sentencing Commission "did not adequately take into consideration the different circumstances under which felons can possess guns," R.25 at 37, when the district court has failed to analyze the specific guidelines provision that deals with possession of firearms by felons. As indicated above, *see supra* note 8, an examination of section 2K2.1 reveals that the Sentencing Commission did, at least to some extent, take into consideration the varying circumstances in which felons might possess firearms. The district court's failure to explain how this section, along with the guidelines as a whole, has failed to take into account the circumstances of Mr. Scott's offense leaves us without a basis upon which to evaluate the reasonableness of the court's departure.

At this point, we do not suggest that the district court has failed to identify any possible basis upon which an appropriate departure may be based.[9] We conclude

(6th Cir.1990) (Kennedy, J., concurring) ("The offense level [in section 2K2.1] has been set under the assumption that the weapons were acquired for unlawful purposes."). Viewed in this light, it is quite possible that the district court's hypothetical defendant might receive a lower guidelines range than Mr. Scott under the terms of the guidelines themselves.

9. For example, the *Thomas* court noted that gang involvement might provide a basis for departure if the district court sufficiently articulates the reasons for the departure and links that reasoning to the structure of the guidelines. 906 F.2d at 328. This court also has approved upward departures for drug-related activities that were not adequately taken into consideration by the guidelines. *See United States v. Williams*, 901 F.2d 1394, 1399–1400 (7th Cir. 1990) (upward departure approved where the guideline provision for robbery with a dangerous weapon did not take into account the increased risk posed by a defendant who committed the crime while under the influence of drugs); *United States v. Jordan*, 890 F.2d 968, 976–77 (7th Cir.1989) (upward departure approved where defendant continued to sell narcotics after his release on bail).

only that the district court has failed to articulate a sufficiently reasoned basis for its departure and has failed to justify its departure in terms of the structure of the guidelines. *See United States v. Ferra,* 900 F.2d 1057, 1062–64 (7th Cir.1990) (suggesting that district courts should look to the guidelines for analogies in determining the extent of departures).

B. *Upward Departures to Reflect Inadequacy of Criminal History Category*

We also conclude that the district court erred in the methodology it employed in attempting to depart based on the inadequacy of Mr. Scott's criminal history category. Although the district court briefly articulated reasons that might warrant this type of departure (e.g., Mr. Scott's drug use during his release on bail[10] and his failure to appear at sentencing or surrender to authorities for over a month[11]), the court then arbitrarily stated that the offense level should be doubled.[12]

 The proper methodology that courts should employ in making departures based on inadequate criminal history is prescribed in section 4A1.3 and has been the subject of several recent opinions by this court. *See, e.g., United States v. Williams,* 901 F.2d 1394, 1396–97 (7th Cir. 1990); *United States v. Schmude,* 901 F.2d 555, 558–60 (7th Cir.1990); *United States v. Miller,* 874 F.2d 466, 468–71 (7th Cir. 1989). If, after properly determining the defendant's initial criminal history category, the court concludes that this category does not reflect the seriousness of either past criminal conduct or the potential for future criminal conduct, the court may consider a departure. Guideline § 4A1.3 (Policy Statement). The degree of departure should be determined by considering the higher criminal history categories and determining which category most closely resembles the criminal history of the defendant. *Miller,* 874 F.2d at 470–71; *see also United States v. Terry,* 900 F.2d 1039, 1044 (7th Cir.1990). If the court exhausts the possibilities provided by the criminal history table, it should consider increases based on the incremental ranges between criminal history categories or offense levels. *See Schmude,* 901 F.2d at 560; *Ferra,* 900 F.2d at 1062. Clearly, the district court failed to follow these procedures in this case. If, on remand, the court determines that Mr. Scott's criminal history category does not represent adequately either his past criminal conduct or the likelihood that he will commit future crimes, it may consider departing upward in accordance with the procedures outlined in this opinion.

### Conclusion

For the foregoing reasons, the sentences imposed by the district court on Mr. Scott are vacated and the case is remanded for

On the other hand, some of the factors mentioned by the district court have been disapproved as bases for departure. In *Thomas,* 906 F.2d at 327, this court held that the need for general deterrence was an insufficient basis for departure. Whether or not the type of firearm or intended use of a firearm may be used as a basis for departure from section 2K2.1 has sparked some controversy among the courts. *See United States v. Enriquez–Munoz,* 906 F.2d 1356, 1360 (9th Cir.1990) (type of firearm may not be used as basis for departure); *United States v. Uca,* 867 F.2d 783, 790 (3d Cir.1989) (intended use of firearm is not a sufficient basis for upward departure). *But see United States v. Robinson,* 898 F.2d 1111, 1118 (6th Cir.1990) (The panel opinion, while noting that section 2K2.1 " 'is not based on the type of firearm,' " stated that "[a]n upward departure may be based on the manner of use or intended use of the firearm"—including "the nature of the firearm." In a partial concurrence, one judge rejected the view that the type of firearm or intended use ordinarily may be considered as a basis for upward departure. *Id.* at 1119–20 (Kennedy, J., concurring)).

10. *See, e.g., United States v. Franklin,* 902 F.2d 501, 506 (7th Cir.1990) (involvement in cocaine while out on bond on cocaine charges held a sufficient basis for upward departure based on inadequate criminal history). *See generally* Guideline § 4A1.3 (Policy Statement).

11. *See* Guideline § 2J1.6 (Failure to Appear by Defendant).

12. It also seems clear that this asserted basis for departure was entwined to some extent with the other asserted grounds for departure, because the district court already had suggested doubling the offense level before it turned to a discussion of Mr. Scott's criminal history.

resentencing in conformity with the principles described in this opinion.

VACATED AND REMANDED.