UNITED STATES of America, Plaintiff–Appellee,

v.

Charles THOMAS a.k.a. Reginald Gardner, Defendant–Appellant.

No. 91–1502.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1992.

Decided July 20, 1992.

James L. Santelle, Maxine A. White, Chris R. Larsen, Asst. U.S. Attys., William J. Lipscomb (argued), Office of U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Chris Averkiou (argued), Chicago, Ill., for defendant-appellant.

Before CUMMINGS, CUDAHY and POSNER, Circuit Judges.

CUDAHY, Circuit Judge.

Charles Thomas challenges his sentence for possession of cocaine with intent to distribute it on the ground that the district court did not adequately justify its decision to depart from the sentencing range prescribed by the United States Sentencing Guidelines. He also contends that the district court did not give adequate notice of its intent to depart. Although we agree with Thomas that the district court's opinion leaves a good deal to be desired, we nonetheless affirm the sentence.

## I.

On August 29, 1989, Charles Thomas pleaded guilty to illegal possession of a firearm in violation of 18 U.S.C. § 924(a)(1)(D), possession of cocaine with intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 and using and carrying firearms during and in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1). A presentence investigation report (PSI report) was ordered and sentencing was set for October 31, 1989.

The PSI report put Thomas' total base offense level under the Sentencing Guidelines at twelve. The report also calculated Thomas' criminal history score at seven, placing him in a criminal history category of IV. For an offense level of twelve and a criminal history category of IV, the Guidelines indicated a sentencing range of 21 to 27 months.

At the sentencing hearing, the government requested an upward departure of approximately 48 months based on Thomas' admissions that he was a member of a gang and had sold cocaine on occasions other than the one to which he pleaded guilty. The court, however, departed more drastically from the Guidelines range, and sentenced Thomas to a total of 25 years for the two Guidelines offenses.[1] On appeal, this court vacated the sentences on the ground that the district court had not adequately justified either its decision to depart or the extent of the departure, and remanded the case for resentencing. *United States v. Thomas*, 906 F.2d 323 (7th Cir.1990).

On remand, the PSI report again set forth an offense level of twelve and a criminal history category of IV, and indicated a Guidelines range of 21 to 27 months. At the sentencing hearing, the government again asked the court to depart upward, this time to a sentence between 92 and 115 months. The government argued that such a departure was justified under section 5K2.9 of the Guidelines, which permits enhancement of a defendant's sentence if the court finds that the defendant committed the offense of conviction "in order to facilitate or conceal the commission of another offense." As the prosecutor explained:

> [N]arcotics cases sentenced under the guidelines are quantity driven. We have to determine the relevant conduct and that assesses the offense level. In this case that really didn't happen.... And so this defendant has never really been held responsible for other cocaine that he may have trafficked prior to the time of his arrest.... And it is our position that he committed the offense in Count 4, the distribution of cocaine, to facilitate the larger offense of conspiracy to distribute cocaine.

Tr. at 3. The prosecutor then directed the court's attention to paragraph 26 of the PSI report, in which Thomas indicated "that he came to Milwaukee in May of 1988 and had been selling cocaine consistently

from May of 1988 to the time of his arrest" in April of 1989. *Id.* at 4. The prosecutor pointed out that "[s]pecifically ... he admits to selling five to six ounces of cocaine per week" from the Atkinson Street gang house where he was arrested. *Id.* Noting that the residence had been occupied by the gang since March 10 of 1989, the prosecutor concluded that Thomas' statements amounted to an admission that he had sold at least 20 ounces, or 520 grams, of cocaine from that house. Therefore, the prosecutor argued, the court should depart upward and sentence Thomas based on "the offense level that we would be at if the defendant's relevant conduct was 500 grams of cocaine or more." *Id.* at 4–5. The prosecutor determined that level to be 26, giving a Guidelines range of 92 to 115 months.

The court sentenced Thomas to 114 months. The court explained the sentence as follows:

> I find that paragraph 26 of the presentence report in which Mr. Thomas admits to selling significant amounts of cocaine over an extended period of time, that the statements in that paragraph are relevant conduct under the drug charge in this case and that the quantity admitted to in that paragraph would put the defendant in the offense level 26. And that an upward departure from the guidelines is appropriate on that count.

Tr. at 10–11. Thomas again appeals. He argues that (1) the district court once again did not adequately justify either its decision to depart or the extent of the departure and (2) the court did not provide Thomas with adequate notice of its intent to depart as required by the Supreme Court's decision in *Burns v. United States*, —— U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991).

## II.

A sentencing court may depart from the Guidelines range only if it finds "aggravat-

---

**1.** Thomas' conviction for use of a firearm in relation to a drug-trafficking crime, a non-Guidelines offense, carried a mandatory, con-

secutive, five-year term of imprisonment. This sentence is not at issue here.

ing or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the sentencing commission in formulating the guidelines." *United States v. Schmude*, 901 F.2d 555, 558–59 (7th Cir.1990) (citing 18 U.S.C. § 3553(b)). The court must "provide articulable reasons, of a type contemplated by the Act and Guidelines, and based on a sufficiently sound factual foundation to justify a departure from the Guidelines." *United States v. Miller*, 874 F.2d 466, 471 (7th Cir.1989). The government contends that the district court met these requirements by adopting the prosecutor's argument for departure based on section 5K2.9. But the district court never stated that it accepted the government's reasoning, nor did it refer to section 5K2.9 when explaining its decision to depart. Rather, the sentencing judge explicitly based Thomas' sentence on his finding that Thomas' PSI report reflected "relevant conduct" that "would put the defendant in the offense level of 26." Tr. at 10–11.

For purposes of narcotics offenses, the Guidelines define "relevant conduct" as "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) (incorporating by reference U.S.S.G. § 3D1.2(d)). The defendant need not have been either charged with or convicted of carrying out these other acts. *United States v. Duarte*, 950 F.2d 1255, 1263 (7th Cir.1991). The sentencing court is *required* to consider such relevant conduct when calculating the defendant's base offense level in order to determine the Guidelines range. U.S.S.G. § 1B1.3; *United States v. Ruiz*, 932 F.2d 1174, 1183 (7th Cir.1991). Thus, the court's decision in this case was not a "departure" at all, but an *adjustment* to the Guidelines range based on relevant conduct not previously included in Thomas' offense level. *See United States v. Smith*, 930 F.2d 1450 (10th Cir.1991) (after rejecting sentencing court's departure based on victim's vulnerability, court separately analyzed validity of sentence in terms of victim vulnerability adjustment). The departure analysis

pressed by both the government and Thomas is simply inappropriate here.

We must still decide, however, whether Thomas' sentence can be upheld based on a "relevant conduct" adjustment. In order to do so, we must answer two questions: First, did the sentencing court make a proper finding of relevant conduct? And second, did Thomas receive sufficient notice that the court might increase his offense level based on the drug sales admitted in paragraph 26 of the PSI report?

### III.

■ This court has held that when a sentencing court decides to increase a defendant's offense level based on uncharged or unconvicted activities, the court "should explicitly state and support, either at the sentencing hearing or (preferably) in a written statement of reasons, its finding that the unconvicted activities bore the necessary relation to the convicted offense." *Duarte*, 950 F.2d at 1263. In this case, the sentencing court never explicitly found that Thomas' various drug sales were part of a "common scheme or plan," nor did the court explain why the facts of the case would justify such a finding. Instead, the court simply intoned the words "relevant conduct" and pronounced sentence.

■ Nevertheless, we think the facts of this case justify upholding the district court's conclusion despite its failure to provide an adequate discussion of the issue. The district court clearly adopted the government's reasoning as to the amount of cocaine that should be considered relevant conduct. The government calculated that amount based on Thomas' *admitted* sales out of the Atkinson Street gang house—the house directly associated with the narcotics offense for which he was being sentenced—together with information in the PSI report that the house had only been occupied since March 10, 1989. The information in the PSI report relied on by the government and adopted by the court demonstrates a temporal and locational relationship among the drug sales in question, and supports the district court's finding of relevant conduct. *Compare*

*Duarte,* 950 F.2d at 1263–64 (although sentencing court "adopted the factual findings and the Guidelines application in the presentence report," appellate court reversed relevant conduct adjustment on ground that the report did not in fact "suggest a temporal, geographical or any other relationship between the [offense of conviction] and the [allegedly related] transactions...").

## IV.

Federal Rule of Criminal Procedure 32 provides that a probation officer "shall make a presentence investigation and report to the court before the imposition of sentence...." Fed.R.Crim.P. 32(c)(1). The report of this pre-sentence investigation must include:

> the classification of the offense and of the defendant under the categories established by the Sentencing Commission pursuant to section 994(a) of title 28, that the probation officer believes to be applicable to the defendant's case.

Fed.R.Crim.P. 32(c)(2)(B). Under section 1B1.3 of the Guidelines, the "classification of the offense" includes any relevant conduct.

██ The PSI report must be provided to the defendant at least ten days before sentencing. Fed.R.Crim.P. 32(c)(3). At the sentencing hearing, the court is required to "determine that the defendant and the defendant's counsel have had the opportunity to read and discuss the presentence investigation report" and to "afford the counsel for the defendant ... an opportunity to comment upon the probation officer's de-termination and on other matters relating to the appropriate sentence." Fed. R.Crim.P. 32(a)(1). Rule 32 thus "contemplates full adversarial testing of the issues relevant to a Guidelines sentence." *Burns v. United States,* —— U.S. ——, 111 S.Ct. 2182, 2186, 115 L.Ed.2d 123 (1991). Notice of those issues is a clear prerequisite to achieving this purpose. *Id.* (" 'Th[e] right to be heard has little reality or worth unless one is informed' that a decision is contemplated.") (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).[2]

██ In the usual case, this notice function will be fulfilled by the PSI report. In this case, however, Thomas' report did not contain any indication that the conduct noted in paragraph 26 might be considered "relevant conduct." Nevertheless, we find that Thomas had sufficient notice that such a ruling was possible to meet the requirements of Rule 32. When the government argued at Thomas' second sentencing hearing that the court should depart from the Guidelines range based on the cocaine sales admitted in paragraph 26, Thomas' counsel quoted to the court the following statement made by the government at Thomas' first sentencing hearing: " 'We're not particularly concerned that the Court adopt his confession about how many ounces he distributed at the drug house *and then increase the guideline range.' "* Tr. at 7 (emphasis added) (quoting Tr. at 3 (Oct. 31, 1989)). Thus, the possibility of increasing Thomas' Guidelines range based on his oth-

---

**2.** The First Circuit, interpreting *Burns* rather than the perhaps broader requirements of Rule 32, has held that a sentencing court is not required to provide a defendant with advance notice of its intent to consider an upward adjustment (as opposed to a departure) not recommended in the PSI report. *United States v. Canada,* 960 F.2d 263 (1st Cir.1992). The court based this conclusion on the *Burns* Court's observation that notice is particularly crucial in the context of *departures* from the Guidelines range:

> Because the Guidelines place essentially no limit on the number of potential factors that may warrant a departure, ... no one is in a position to guess when or on what grounds a

district court might depart, much less to "comment" on such a possibility in a coherent way.

*Burns,* 111 S.Ct. at 2186 (citation omitted). The First Circuit's holding does not necessarily conflict with our analysis here. We do not hold that the *Burns* notice requirement as such applies to adjustments. Rather, we find that Rule 32, which the First Circuit does not directly address, mandates that the defendant receive *some* notice of potential adjustments. That notice requirement may well be less exacting than the one applicable to departures. And, as our opinion in this case makes clear, notice with respect to adjustments need not be provided by the sentencing court itself.

er drug sales was raised during the course of Thomas' *first* sentencing proceedings. Although the government chose not to urge that approach and the court chose not to take it, the issue was flagged for the defense at that point, and the defense clearly recalled the government's earlier statements at the second hearing. *Cf. United States v. Bachynsky,* 949 F.2d 722, 733–34 (5th Cir.1991) (defendant had adequate notice of possible upward departure based on dollar loss of fraud even though amount of loss was not tied to a recommendation for departure until amended PSI was disclosed, seven days before sentencing; defendant's objections to original PSI made clear that he recognized significance of the disputed amount in the sentencing process). Unlike a Guidelines departure, enhancement based on relevant conduct is mandatory, not discretionary. Thomas had minimally adequate notice that the other drug sales to which he had confessed might be used to enhance his sentence by increasing his sentencing range.[3]

## V.

In upholding this sentence, we must again express disappointment at the district court's handling of the matter. The district court purported to "depart" from the Guidelines when there was no need to do so, and it offered perfunctory justifications for the sentence imposed. As we noted the first time this case was before us: "Judges are not free to reject the Guidelines out of hand, nor are they at liberty to impose personalized sentencing agendas. The Guidelines, over which there has been much scholarly debate, have been found to be a constitutional act of Congress and must be followed." *Thomas,* 906 F.2d at 329. It so happened that they were followed here, but apparently as

much by accident as by design. The sentence is

Affirmed.

---

**3.** We reject the government's argument that the district court's presentencing order provided adequate notice in this case. Although the court's order does refer to the paragraph 26 sales, that reference appears in the middle of a three-page description of the events leading up to Thomas' arrest, the circumstances of the arrest itself, and Thomas' extensive prior criminal record. The drug sales are given no particular prominence, but appear as part of a litany of factors that the court believes make "a penalty within the guideline range[ ] inadequate" in this case. Decision and Order at *United States v. Scott,* 757 F.Supp. 972, 975 (E.D.Wis.1991). In our view, the court's presentencing order is less an attempt to provide the parties with "notice" of the factors that will be at issue at sentencing than it is a critique of the Sentencing Guidelines and their administration by this court.