151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Timothy MALONE, Defendant-Appellant.
 No. 97-2844.
 United States Court of Appeals, Seventh Circuit.
 Argued June 9, 1998.
Decided June 30, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois. No. 2:96CR20002-01 Michael M. Mihm, Chief Judge.
 Before Hon. RICHARD A. POSNER, Chief Judge, Hon. RICHARD D. CUDAHY, Hon. JESSE E. ESCHBACH, Circuit Judges.
 
 ORDER
 
 1
 An investigation by the Illinois State Police Task Force revealed that Timothy Malone was involved in distributing a significant amount of cocaine in Chicago and Decatur, Illinois. After selling approximately one kilogram of cocaine to a cooperating individual (CI), Malone and his wife were arrested. Malone was charged with one count of distribution of cocaine in violation of 21 U.S.C. § 841, to which he pleaded guilty. On appeal, Malone contends that the district court's determination regarding the amount of cocaine for which he was held responsible was not supported by factual findings. Malone also asserts that the government failed to meet its burden of proof regarding the amount of cocaine for which he was held accountable.
 
 
 2
 The PSR prepared for this case shows that prior to being arrested in early 1996 for selling approximately one kilogram of cocaine to a CI, Malone was involved in other significant cocaine transactions with at least three other individuals. One purchaser, Melvin Edwards, stated that he bought a total of 150 kilograms of cocaine from Malone on approximately 110 occasions from mid-1993 to September 1995. This total included his cooperating with Stephen Roundtree and Michael Bond to buy three to five kilograms of cocaine from Malone on six to eight different occasions. Roundtree also personally purchased an estimated 150 kilograms of cocaine from Malone between late 1993 and early 1995.
 
 
 3
 Based on this information, the PSR concluded that Malone should be held accountable for approximately 300 kilograms of cocaine under U.S.S.G. § 1B1.3, for which the Guidelines dictate a base offense level of 38. Malone received a three-level reduction in his base offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b)(2), resulting in an adjusted base offense level of 35 and a Criminal History Category of III. The Sentencing Guidelines recommend 210 to 262 months' imprisonment for this intersection of base offense level and criminal history category. At sentencing, the government moved for a downward departure under § 5K1.1, which the district court granted. Malone was sentenced to 180 months' imprisonment and five years' supervised release.
 
 
 4
 Malone did not raise his challenges to relevant conduct before the district court. Accordingly, this court's review is for plain error. United States v. Taylor, 72 F.3d 533, 542 (7th Cir.1995). Malone first argues that the district court failed to find that the 300 kilograms of cocaine for which he was held accountable constituted relevant conduct under U.S.S.G. § 1B1.3. The Sentencing Guidelines "require [ ] that the district courts take into account 'the full range of related conduct,' whether it be charged or not." United States v. Petty, 132 F.3d 373, 381 (7th Cir.1997) (internal citation omitted). For drug transactions revealed by the record to constitute relevant conduct, they must be " 'part either of the same course of conduct as the charged offense or of a common scheme or plan including the charged offense.' " United States v. Patel, 131 F.3d 1195, 1203-04 (7th Cir.1997) (internal citation omitted). This court requires that a district court make an explicit finding that the uncharged or unconvicted conduct bore the required relationship with the offense of conviction. Id. at 1203. However, a district court's implicit finding of relevant conduct based on the recommendations in the PSR and the government's theory can be sufficient "where it is clear that the district judge believed the required relationship to be present and the judge's implicit finding is supported by the record." Id. at 1204.
 
 
 5
 Offenses are part of a common scheme or plan if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3, note 9(B). "Offenses are part of the same course of conduct if they are 'sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses.' " Taylor, 72 F.3d at 548 (quoting U.S.S.G. § 1B1.3, note 9(B)). In determining whether certain conduct constitutes the same course of conduct under § 1B1.3, the court should review such factors as the degree of similarity of the offenses, the regularity of the offenses, and the time interval between the offenses. U.S.S.G. § 1B1.3, note 9(B). Here, neither party objected to the findings or recommendations contained in the PSR, and the district court adopted the findings of the PSR at sentencing. According to the district court:
 
 
 6
 You were really involved in a major drug operation. The offense conduct section of this report details that, literally apparently hundreds of transactions. During the course of this you accepted hundreds of thousands of dollars from your customers, possibly more than that, charged 22,000, $34,000 cash for a kilo. Sometimes you and your wife transported cocaine directly to your customers in Decatur.
 
 
 7
 One of the people giving information to the United States advised that from mid to late 1993 to September of '95, that he personally met with you on at least 110 occasions to conduct drug transactions. And that's just one person. You are, in my view, a major, major drug distributor.
 
 
 8
 Sent. Tr. at 9-10.
 
 
 9
 Although not making explicit findings that the cocaine distributed to Edwards and Roundtree constituted relevant conduct, the district court's comments at sentencing indicate that it considered the transactions relevant conduct. The record supports this conclusion. Malone was charged with one count of distributing cocaine for fronting approximately one kilogram of cocaine to a CI in Decatur, Illinois. The PSR indicates that the delivery took place in December 1995 in a restaurant parking lot in Decatur during which the CI gave $500 in prerecorded bills to Malone and his wife as a delivery fee for the kilogram of cocaine. A week later, when Malone and his wife returned to Decatur for payment of the balance owed, $25,000, they were arrested.
 
 
 10
 The circumstances of the transactions with Edwards and Roundtree indicate that they were part of a common scheme or plan or the same course of conduct as the offense of conviction. The PSR states that Edwards and Roundtree began buying drugs in 1993 from Malone and his wife and continued through the fall of 1995. The offense of conviction occurred in December 1995. As with the offense of conviction, both Malone and his wife were involved in the sale of cocaine to Edwards and Roundtree. Edwards and Roundtree told authorities that they would deliver the money to Malone's wife at the Malones' home in Chicago while Malone went to pick up the cocaine. The PSR also indicates that, similar to the controlled buy, Malone and his wife delivered cocaine to Roundtree's and Edwards' apartments in Decatur. Finally, Edwards and Roundtree stated that the Malones often would front them cocaine, which is what occurred in the controlled buy by the CI in December 1995. Thus, despite the district court's failure to state expressly that the transactions at issue constituted relevant conduct, the record supports the court's implicit decision that the 300 kilograms sold by the Malones to Edwards and Roundtree constituted relevant conduct. See Taylor, 72 F.3d at 548-49; United States v. Thomas, 969 F.2d 352, 355-56 (7th Cir.1992).
 
 
 11
 Further, the drug sales involved common accomplices, Malone and his wife. They also involved similar modus operandi. The Malones traveled to Decatur for the controlled buy as well as for certain transactions with Roundtree. Malone also delivered cocaine to Edwards' Decatur apartment. Common accomplices and common modus operandi establish additional support for the conclusion that the uncharged drug transactions constituted relevant conduct. See Petty, 132 F.3d at 373. We cannot say that the district court plainly erred when it considered the multiple transactions with Edwards and Roundtree as part of one large scheme.
 
 
 12
 In a related argument, Malone asserts that the government did not meet its burden in establishing the amount of cocaine for which he was held accountable. In calculating the defendant's base offense level based on the amount of drugs attributable to the defendant, "[i]t is ... crucial that the information the district court relies on ... have 'sufficient indicia of reliability to support its probable accuracy.' " United States v. Acosta, 85 F.3d 275, 282 (7th Cir.1996) (internal citation omitted). At sentencing, the government bears the burden of proving by a preponderance of the evidence the amount of drugs attributable to the defendant. United States v. Beler, 20 F.3d 1428, 1431 (7th Cir.1994). In determining the base offense level, the PSR calculated the amount of drugs for which Malone was held accountable, and the district court adopted the factual findings in the PSR in their entirety. Malone put forth no contrary evidence and did not object to the PSR at sentencing; accordingly, the district court did not plainly err in accepting the facts in the PSR as reliable. See United States v. Mustread, 42 F.3d 1097, 1102-03 (7th Cir.1994) ("[W]here a court relies on a PSR in sentencing, it is the defendant's task to show the trial judge that the facts contained in the PSR are inaccurate.") (citing United States v. Coonce, 961 F.2d 1268, 1280-81 (7th Cir.1992)).
 
 
 13
 AFFIRMED.