**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Wavell A. ROBINSON,**
**Defendant–Appellant.**

**No. 88–4020.**

United States Court of Appeals,
Sixth Circuit.

Argued June 8, 1989.

Decided March 13, 1990.

Robert A. Behlen, Jr., Asst. U.S. Atty. (argued), Cincinnati, Ohio, Gary L. Spartis, Office of the U.S. Atty., Columbus, Ohio, Gregory G. Lockhart, Office of the U.S. Atty., Dayton, Ohio, for plaintiff-appellee.

Gordon Hobson (argued), Spater, Gittes & Terzian, Columbus, Ohio, for defendant-appellant.

Before KENNEDY, JONES and WELLFORD, Circuit Judges.

WELLFORD, Circuit Judge.

This appeal from a sentence imposed by the district court following a guilty plea is brought by defendant, Wavell A. Robinson, who contends that there was an inappropriate departure from the sentencing guidelines imposed under the Sentencing Reform Act of 1984, 18 U.S.C. § 3553 *et seq.* (hereafter "The Act"). Robinson appeals pursuant to 18 U.S.C. § 3742.[1] It is undisputed that application of the guidelines in this case involving the aiding and abetting of the making of a false statement in the acquisition of a firearm under 18 U.S.C. § 922(a)(6) and § 924(a)(1)(B) would have required a sentence of between a minimum of four months and a maximum of ten months. The district court judge, however, departed from the guidelines and sentenced defendant to sixty months in prison, the statutory maximum.

On July 21, 1988, a federal grand jury returned a four-count indictment against defendant, who was charged with conspiracy, in violation of 18 U.S.C. § 371; possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and aiding and abetting in making a false statement in the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6) and § 924(a)(1)(B).

Robinson entered not guilty pleas to all charges at his arraignment. Later, through means of a plea agreement, defendant changed to a plea of guilty to the last count, aiding and abetting.

After the presentence investigation of defendant was completed, the district court held a sentencing hearing at which testimony was presented. The district judge considered the facts and circumstances of the case, and determined that an upward departure from the Sentencing Guidelines was warranted. After explaining his reasons, the district court sentenced defendant Robinson to sixty months imprisonment, a three year period of supervised release, and a $50 special assessment. Defendant filed a timely notice of appeal.

## UNDERLYING FACTS

On June 23, 1988, a federal agent observed a car in the parking lot of the Norcol Gun Shop in Columbus, Ohio, containing five males. Three of the men in the car, after talking to defendant, who remained inside the car, entered the shop. The agent suspected that a "straw purchase" was taking place, a transaction whereby one person purchases a firearm for another person who remains unknown to the seller.

After the men returned to the parked vehicle and it moved away from the parking lot, the agent followed the car in which defendant and the others were occupants. The agent then stopped the car and asked for the box containing the firearm. The men gave the agent an empty box. Thereupon the agent directed the men in the car to put their hands in the air and to move

1. 18 U.S.C. § 3742 provides in pertinent part:
   (a) Appeal by a defendant.—A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—
   (1) was imposed in violation of law;
   (2) was imposed as a result of an incorrect application of the sentencing guidelines; or
   (3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or
   (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

out of the car. One of the occupants had a firearm in his pocket. At defendant's feet was a black nylon bag containing the just-purchased Tech 9 firearm, and a second similar weapon purchased at the same gun shop just two days earlier. Also found on the rear floor of the car was a bag containing 1.22 grams of crack cocaine located on the passenger side of the floorboard (defendant was seated on the rear driver's side).

After entry of the guilty plea, Probation Officer Holly Renner interviewed defendant in the process of preparing a presentence report. Robinson advised Renner that he came to Columbus from New York City to buy firearms which he intended to resell in New York. Defendant admitted that he paid Raymond Miller $30 to buy the firearm, the purchase of which was witnessed by the federal agent, and defendant also admitted paying one Barbara Harrison $50 to purchase the other similar weapon for him. Altogether he paid approximately $255 for each gun and expected to resell each for $500.

Defendant had previously been arrested in New York City for possession of marijuana approximately a year before this episode, but the charge was vacated on the condition that defendant be involved in no further violations of law for six months. Robinson had no other known prior criminal record. Defendant told Renner, however, that he was a regular user and seller of marijuana. At the same time, he denied any knowledge of the crack cocaine found in the car.

Anselm Nathaniel, one of the other men arrested with defendant, claimed that the cocaine belonged to him, stating that defendant gave him the cocaine for his assistance in purchasing the gun. Based on this information, the probation officer made the following recommendations in reference to the Sentencing Guidelines:

| | |
|---|---|
| *BASE OFFENSE LEVEL—GUIDELINE 2K2.1* | 9 |
| *ROLE IN OFFENSE—3B1.1(c)* | |
| Defendant was assigned a two point enhancement for being an organized leader, manager, or supervisor in the criminal activity | + 2 |
| *ACCEPTANCE OF RESPONSIBILITY–GUIDELINE § 3E1.1(a)* | |
| Defendant was given a two point reduction for his acceptance of personal responsibility for his criminal conduct | |
| | − 2 |

| | |
|---|---|
| *TOTAL OFFENSE LEVEL* | 9 |
| *CRIMINAL HISTORY CATEGORY* | I |
| *SENTENCING GUIDELINE* | 4–10 Mos. |

The probation officer did not recommend enhancement under Guideline § 2K2.1(c)(1), which permits enhancement when a firearm is used in the commission or attempt of another criminal offense.

The probation officer stated in her report, however, that an upward departure in the sentencing might be warranted based upon (1) defendant's marijuana sales in New York City; (2) the assertion of Anselm Nathaniel that defendant gave him cocaine base for his assistance in purchasing the firearm; and (3) defendant's admission that he intended to resell the firearms in New York.

At Nathaniel's sentencing hearing, which occurred on the same day as defendant's, Nathaniel testified that he received the crack from defendant in exchange for his assistance in purchasing the guns, and that he was going to smoke it. Nathaniel's attorney, however, advised the district judge that Nathaniel was involved in the gun transaction, but held the cocaine merely as an agent of defendant with instructions to give it to the person who would purchase the firearm. Defendant testified, on the other hand, that he was not a user of crack, that he did not possess crack at the time of his arrest, that he did not give any to Nathaniel, and that he never sold any cocaine.

## REASONS FOR SENTENCE IMPOSED

In concluding that Robinson had paid Nathaniel in the form of crack cocaine for assistance in effectuating a straw purchase of a firearm, Judge Graham stated:

The Guidelines Sentence in this case would be a period of imprisonment of four to ten months which is woefully inadequate for this offense. This Guideline must contemplate a simple firearm transaction, whereas in this case we have much more than that. We have the illegal purchase of firearms with the use of an intermediary, we have semi-automatic weapons which are the weapons of choice for those involved in the drug trade, we have the purchase being made illegally for the purpose of an illegal

resale of those guns on the streets of New York City, presumably to individuals involved in the drug trade, and that transaction poses a significant threat to the citizens of this community because the Court notes that when arrested, this defendant had one of these guns with a fully loaded magazine, in fact he had two of these guns in a nylon bag at his feet, and in that bag was a fully loaded magazine containing 32 rounds, plus multiple additional loose rounds, plus additional ammunition in the glove box of the car. The Court noted that this defendant has received the benefit of a plea agreement which has resulted in the dismissal of some very serious charges for which he could have been incarcerated for many, many years. So he has received a significant benefit in being permitted to plead guilty to a relatively minor offense, carrying with it a maximum possible penalty of five years imprisonment.

Now, the Court concludes that this defendant is a danger to this community and the community of New York City, and the Court is going to depart from the Guidelines in this case and the Court is going to impose in this case the maximum sentence which Congress provided for this particular offense, namely five years.

Now, in addition the Court will impose a three-year period of supervised release with the following conditions: That the defendant not commit any crimes, federal, state, or local; that he abide by the standard conditions of supervised release recommended by and adopted by this district court, and that he be prohibited from possessing a firearm or any other dangerous weapon.

Now, the Court will not impose a fine in this case because the facts indicate the defendant is not capable of paying a fine. The Court will impose the statutory $50 assessment. That will be the Court's judgment and sentence in this case.

### STANDARD OF REVIEW FOR FACTFINDING AT SENTENCING

Robinson challenges the district court's finding that defendant gave crack cocaine to Nathaniel in exchange for his assistance in purchasing the guns and that the 1.22 grams of crack cocaine was packaged in 18 separate packages, indicating that the crack cocaine was intended for distribution. Defendant also contests the court's finding that he intended to resell the guns in New York City, presumably to other drug dealers. He asserts that these findings were clearly erroneous.

Title 18, U.S.C. § 3577, states that "[n]o limitations shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Courts have noted that "this statute was enacted in order to clearly authorize the trial judge to rely upon information of alleged criminal activity for which the defendant had not been prosecuted...." *Smith v. United States*, 551 F.2d 1193, 1196 (10th Cir.), *cert. denied*, 434 U.S. 830, 98 S.Ct. 113, 54 L.Ed.2d 90 (1977) (citing *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Williams v. People of the State of New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). "[A] judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. at 446, 92 S.Ct. at 591, *quoted in Roberts v. United States*, 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1960). *See also Alabama v. Smith*, —— U.S. ——, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). Sentences imposed on the basis of material misinformation under some circumstances, however, may violate due process. *Roberts*, 445 U.S. at 556, 100 S.Ct. at 1362.

■ The district court may consider hearsay evidence in determining sentence, but the accused must be given an opportunity to refute it, and the evidence must bear some minimal indicia of reliability in respect of defendant's right to due process. *United States v. Rodriguez*, 765 F.2d 1546,

1555 (11th Cir.1985); *United States v. Otero*, 868 F.2d 1412 (5th Cir.1989). In challenges to the evidence considered by the sentencing judge, the defendant must establish that the challenged evidence is materially false or unreliable, and that such false or unreliable information actually served as the basis for the sentence. *Rodriguez, supra.*

■ The district court's findings of fact that underlie the ultimate sentence ordinarily are reviewed under a clearly erroneous standard. 18 U.S.C. § 3742(d). *See United States v. Velasquez–Mercado*, 872 F.2d 632, 635 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 187, 107 L.Ed.2d 142 (1989); *United States v. Mejia–Orosco*, 867 F.2d 216, 218 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989); *United States v. Burch*, 873 F.2d 765 (5th Cir.1989). We apply such a standard in this case and find that the district court's fact findings are not clearly erroneous.

## DEPARTURE FROM THE GUIDELINES

We now pass to the questions concerning the district court's departure from the guidelines, beginning with the statutory language.

**Application of guidelines in imposing a sentence.**—The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and that should result in a sentence different from that described.

18 U.S.C. § 3553(b).

Part K, § 5K2.0 of the guidelines, a policy statement, amplifies this standard:

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by

the Sentencing Commission in formulating the guidelines." Circumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the court at the time of sentencing. Nonetheless, the present section seeks to aid the court by identifying some of the factors that the Commission has not been able to fully take into account in formulating precise guidelines. Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing judge. Similarly, the court may depart from the guidelines, even though the reason for departure is listed elsewhere in the guidelines (*e.g.*, as an adjustment or specific offense characteristic), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

Where the applicable guidelines, specific offense characteristics, and adjustments do take into consideration a factor listed in this part, *departure from the guideline is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction.*

.  .  .  .  .

Harms identified as a possible basis for departure from the guidelines should be taken into account only when they are relevant to the offense of conviction, within the limitations set forth in § 1B1.3. (emphasis added).

Section 5K2.6 deals with weapons:

If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the

dangerousness of the weapon, *the manner in which it was used,* and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase. (emphasis added).

There is also a guideline dealing with the adequacy of criminal history and departure:

A departure under this provision is warranted when the criminal history category significantly underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes.... The court may, after a review of all the relevant information, conclude that the defendant's criminal history was significantly more serious than that of most defendants in the same criminal history category, and therefore consider an upward departure from the guidelines. However, a prior arrest record itself shall not be considered under § 4A1.3.

Section 4A1.3.

The plea agreement in this case provided, in pertinent part, as follows:

Defendant WAVELL ANTHONY ROBINSON agrees to testify truthfully and completely concerning all matters pertaining to the Indictment returned herein and to any and all other illegal drug or firearm activity occurring in the Southern District of Ohio in which he may have been involved or as to which he may have knowledge. Defendant further agrees to provide a complete statement to authorities of the United States concerning such matters prior to the entry of his guilty plea pursuant to this agreement. Defendant agrees to submit to supplemental debriefings on such matters whenever requested by authorities of the United States, whether before or after his plea is entered.

If such plea of guilty is entered, and not withdrawn, and the Defendant WAVELL ANTHONY ROBINSON acts in accordance with all other terms of this agreement, the United States Attorney for the Southern District of Ohio agrees to seek leave of court at the time of sentencing to dismiss Counts 1, 2 and 3 of the Indictment as respects Defendant WAVELL ANTHONY ROBINSON and not to file additional charges against him based on his activities charged in the Indictment or based on other illegal drug or firearm activity in the Southern District of Ohio occurring prior to the date of the Indictment and as to which Defendant gives testimony or makes statements pursuant to this agreement.

We must next consider the effect of the plea agreement in this case. First, defendant was alerted to the fact that he was subject to a five year maximum sentence and a substantial fine. The United States Attorney sought dismissal of counts one through three based on (1) defendant's truthful testimony about all matters involved in the indictment and "all other illegal drug or firearm activity occurring in the Southern District of Ohio" in which he had involvement or about which he had knowledge, and (2) providing a "complete statement concerning such matters," and (3) giving "supplemental debriefings on such matters." The United States Attorney, based upon this cooperation, agreed not to "file additional charges" on information furnished about "activity in the Southern District of Ohio."

▇ This plea agreement seems to be one contemplated by § 1B1.8, which sets out that "where a defendant agrees to cooperate with the government by providing information concerning unlawful activities *of others,* and the government agrees that *self-incriminating* information so provided will not be used against the defendant," then such information is not to be used in setting the guideline range. (emphasis added).

▇ It seems to us that certain information given by defendant in cooperation did not involve conduct in the Southern District of Ohio, and some involved his own criminal activities, not the activity of others. At the same time, if information under § 1B1.8, or its equivalent in the form of a plea agreement, was not to be used "in determination of the applicable guideline range," then it certainly should not be used

by the district court to depart and to enhance the sentence above the otherwise applicable guideline range. Application Note 1, page 1.24 of the guidelines manual indicates as much by stating: "such defendant should not be subject to an increased sentence by virtue of that cooperation where the government agreed that the information revealed would not be used for such purpose."

Application Note 1 to § 1B1.8 provides further that "self-incriminating information obtained under a cooperation agreement is not to be used to determine the defendant's guideline range." (Emphasis added). The plea agreement in this case may be deemed a cooperation agreement, but the district court has made no determination about the applicability in this case of § 1B1.8.

We must remand this matter to the district court for a determination as to the effect of the plea agreement upon the cooperating information furnished, and as to the effect of § 1B1.8, if any. Some information given by Robinson and relied upon by the district court may well be excludable from consideration for sentencing purposes. *See United States v. Shorteeth,* 887 F.2d 253 (10th Cir.1989).

The defendant advanced this § 1B1.8(a) argument to the district court at the sentencing hearing. The district judge responded that Robinson's participation in a transaction involving exchange of drugs for services was sufficient basis to warrant a departure, since the guidelines sentence otherwise for the firearm offense would be "woefully inadequate." The district court must, however, set out with particularity the extent to which he considered, if at all, information given which might be subject to § 1B1.8(a) limitations in respect to the departure. The district court should separate the cooperating information given by defendant which may be used for sentencing purposes and that part, if any, which cannot be used.

■ The district court also indicated as a basis for departure the "use of an intermediary" in the acquisition of the weapon or weapons in question. The guilty plea in this case based upon the government's "plea agreement submission of elements and penalties for 18 U.S.C. §§ 922(a)(6) and (2)" was that "defendant knowingly aided and abetted *another* in making a false ... statement ... made in connection with the acquisition of a firearm." (emphasis added). The district court cited defendant's use of an intermediary as one factor justifying departure from the Guidelines. However, this fact was already accounted for in the Guidelines calculations: defendant's offense level was increased by two because of his role as an "organizer" of the intermediary. Therefore, this factor cannot justify a departure from the Guidelines. We therefore find it error to have considered this as a reason for a departure. Since defendant was treated as an organizer, his use of an intermediary, moreover, was already taken into account.

Next, the district court found a departure warranted based upon defendant's involvement with "semi-automatic weapons." A "firearm" is defined under the underlying statute involved as "any weapon ... which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3)(A).

■ "Machineguns" or automatic weapons are required to be registered under 26 U.S.C. § 5845(b), a section dealing with excise taxes generally. Section 2K2.1 of the guidelines (background notes) indicates that "the guideline is not based upon the type of firearm." An upward departure, however, may be based on the manner of use or intended use of the firearm. We believe that the district court may take into account the nature of the firearm, whether it is automatic and intended to be used in the drug trade.[2] When a sentenc-

**2.** We would add that because the sentencing statute calls for sentencing within the guidelines "unless the court finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentenc-

ing Commission in formulating the guidelines," 18 U.S.C. § 3553(b), the sentencing court should first look to the guidelines to see if an aggravating or mitigating circumstance is dealt with there before deciding to depart.

ing court takes these factors into account, however, it should articulate the basis of departure for each such factor in order to facilitate meaningful review on appeal.

█ The court also mentioned as a factor in the departure sentencing that defendant came to Columbus for the purpose of working in crackhouses and for selling crack cocaine. The fact that defendant came to Columbus, engaged in drug and weapons trafficking, and planned to return to New York may be related to the 1B1.8(a) limitations previously discussed in connection with the plea agreement. In any event, however, the fact that defendant came to Columbus from elsewhere and was treated, on that account, more stringently than a Columbus resident, is not a permissible basis for a disparity in sentencing or a departure. *See United States v. Rodriguez*, 882 F.2d 1059 (6th Cir.1989), for a general discussion of departure standards.

█ Finally, we are mindful of the vast and mounting concerns expressed in the media and in studies and empirical data concerning the devastating effects of crack cocaine in comparison to certain other types of controlled substances. We do not find it inappropriate or improper, within reasonable limits, for a sentencing judge, based upon proper evidence, to take into account as aggravating factors that a defendant has worked in a house or place where crack cocaine is regularly distributed; has himself dealt in substantial amounts of crack;[3] or has supplied weapons to known crack cocaine dealers or distributors. Our concern in this case is whether this information came entirely from defendant himself, cooperating under a plea agreement, which may preclude use of such information to the detriment of Robinson himself.

In this respect, we note § 2K2.1(c)(2) of the guidelines, which applies to the statute under which defendant entered his guilty plea, and states:

If the defendant used or possessed the firearm in connection with commission or attempted commission of another offense, apply § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is higher than that determined [under § 2K2.1(a)].

Under the circumstances we must RE-MAND to the district court for resentencing, as and if necessary to the extent that improper aggravating factors have been taken into account by the sentencing judge.

KENNEDY, Circuit Judge.

*I concur in the panel's opinion except with respect to the discussion regarding automatic weapons.*

█ In departing, the District Court relied on the nature of the firearms, noting that semi-automatics are the "weapon of choice" in the drug trade. But the applicable guideline explicitly rejects the type of firearm as a sentencing criterion: it differentiates according to intended use, "not ... upon the type of firearm." *See* Guidelines § 2K2.1 (commentary). The government's brief notes that Guidelines § 5K2.6 allows the court to enhance the sentence in accordance with "the dangerousness of the weapon" used or possessed in the commission of the offense. But it would be illogical to construe this general provision to override the Commission's specific statement that the type of firearm is irrelevant to the appropriate sentence for the crime charged in this case.

█ Further, the fact that the guns were loaded does not appear to be relevant to the crime charged. While whether a gun is loaded would be a relevant consideration for crimes involving illegal use of a firearm (e.g., armed robbery), this offense is aimed at the illegal acquisition of guns. The focus is on the means used to acquire the firearms and the purpose for which they are acquired. Whether a gun is loaded says little about the severity of this crime: a loaded gun might have been il-

We note this provision of the guidelines to illustrate the flexibility that can be achieved in the appropriate case without necessitating a departure from the guidelines, but we offer no opinion at this time as to the applicability of the above-quoted section in defendant's case.

3. Defendant denies he is a user of crack; whether he was a distributor is subject to fact-finding by the district court.

legally acquired for bear hunting, and an empty one for the drug trade.

■ Defendant apparently acquired the firearms for the illegal purpose of resale. As the government observes, whether the firearm was obtained for an unlawful purpose is an important factor in determining the appropriate sentence. Once again, however, this factor is built into Guidelines § 2K2.1: it calls for a four-point reduction in offense level where the firearms were obtained for a lawful purpose. The offense level has been set under the assumption that the weapons were acquired for unlawful purposes; therefore, the defendant's illicit purposes do not ordinarily justify a departure. *See United States v. Uca*, 867 F.2d 783, 790 (3d Cir.1989) (under Guidelines § 2K2.1, "the intended use of the guns is not a circumstance warranting upward departure"). Departure could, of course, still be warranted if the court finds that Guidelines § 5K2.0 applies.[1]

---

1. Where the applicable guidelines, specific offense characteristics, and adjustments do take into consideration a factor listed in this part, departure from the guideline is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction. *Guidelines* § 5K2.0.