934 F.2d 320
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Kenneth BANKS, a/k/a Kenny Banks, Defendant-Appellant.
 No. 90-5828.
 United States Court of Appeals, Fourth Circuit.
 Argued April 11, 1991.
Decided May 28, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. J. Calvitt Clarke, Jr., District Judge. (CR-90-41)
 Duncan Robertson St. Clair, III, St. Clair & Miller, P.C., Norfolk, Va., for appellant.
 Charles Dee Griffith, Jr., Assistant United States Attorney, Norfolk, Va., (argued), for appellee; Henry E. Hudson, United States Attorney, Norfolk, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before DONALD RUSSELL and WIDENER, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, Sitting by Designation.
 PER CURIAM:
 
 
 1
 William Kenneth Banks ("Banks") has appealed from a district court judgment imposing sentence based on quantities of drugs not charged in his indictment and on a finding that he played an aggravating role in the offense. Banks had pleaded guilty to attempting to possess in excess of 100 grams of heroin with intent to distribute, 21 U.S.C. Secs. 841(a)(1), 846, and unlawful use of a communication facility to facilitate the attempted possession of heroin, 21 U.S.C. 843(b). Banks admitted that he attempted to possess 473 grams of heroin in the transaction for which he was charged. However, Banks denied that he had also engaged in unindicted drug-related conduct. This unindicted conduct plus the conduct charged involved a total of 7.77 kilograms of heroin. The unindicted conduct was also the basis for a finding that Banks had played an aggravating role in the offense. The issues raised are (1) whether the quantities of drugs involved in unindicted conduct were properly included by the district court in its determination of a sentence and (2) whether it was proper to attribute to Banks an aggravating role in the offense. We find no clear error in the district court's sentencing decision and will affirm.
 
 I.
 
 2
 On March 9, 1990, Gary Weathers ("Weathers"), a federal prisoner, telephoned Banks requesting assistance in a sale of drugs. Weathers told Banks he needed some money for his appeal and that he needed someone he could trust to sell some drugs for him. Banks agreed, and Weathers said he would call him back. Weathers then made a second call to Banks to arrange a meeting between Banks and an undercover DEA agent at a restaurant in Norfolk, Virginia. Banks and the agent met as planned at the restaurant, but Banks wanted to leave and conduct the transaction somewhere else. At the second location, Banks accepted from the agent a package containing what he believed was a quantity of heroin. The package actually contained 473 grams of flour. Banks took the package and went back to his car. He was then arrested and charged with attempting to possess heroin with intent to distribute.
 
 
 3
 During preparation of a presentence report, the probation officer interviewed FBI Special Agent James Watters ("Watters") about Banks' other involvements in the distribution of controlled substances. From this information, the probation officer arrived at a quantity of 8.9 kilograms of heroin, resulting in a base offense level of 34. At the sentencing hearing, Special Agent Watters testified regarding the information he had received from other witnesses which resulted in the base offense level for Banks. Watters stated that FBI information indicated that Banks had been involved in an ongoing distribution of heroin from 1982 until 1988. Watters also stated that Banks obtained the heroin from a man in New York named Tinsely Madison and that Banks was sending individuals up to New York to obtain the heroin. Watters then testified as follows.
 
 
 4
 In 1982 Banks sent Terry Mitchell to New York to give Madison some money, receive heroin in exchange, fly back to Norfolk, Virginia, and give Banks the heroin. Mitchell made two trips, bringing back a total of four kilograms of heroin, and received $10,000 for making each trip. This information was obtained from Mitchell, who Watters characterized as "very reliable."
 
 
 5
 In November 1986, Banks sent Rufus Hurtle to New York to purchase heroin. On his return from New York, Hurtle was arrested at the Norfolk airport with 900 grams of heroin. This information was obtained from Hurtle and at least three other informants who said the heroin was intended for Banks.
 
 
 6
 During a period of at least three months in 1986, Gary Weathers purchased from Banks 800 grams of heroin in capsule form. Weathers and Banks made regular transactions until December 1988. During this period, Weathers obtained an additional one kilogram of heroin from Banks.
 
 
 7
 In January 1987, Banks sent Robert Lee Watson to New York to purchase heroin. Watson was arrested in New Jersey, as he was returning to Norfolk, with 600 grams of heroin. At least three informants stated that this heroin was intended for Banks.
 
 
 8
 After Watters provided this testimony regarding Banks' unindicted conduct, Banks testified and denied involvement in any drug dealings other than the offense for which he was charged.[1] Banks objected to the base offense level determined as a result of the unindicted conduct testified to by Watters. However, Banks conceded that if the district court found that the information Watters provided was factually true, the information should be used in determining his sentence.
 
 
 9
 Banks addressed the court again and also denied that he had intended to receive heroin in the transaction with the undercover agent. He stated that he though he was getting cash, not heroin. These statements were in direct contradiction to his statements at the plea proceeding, during which Banks pleaded guilty to the charge of attempting to possess heroin. These statements also contradicted a statement in the presentence report that, when Weathers called Banks to set up the transaction, he told Banks he needed someone he could trust to sell drugs for him. The court found that Banks had intended to receive heroin, not cash, in the transaction with the undercover agent.
 
 
 10
 The district court concluded that "the agent's testimony and the results of his investigation are far more credible" than Banks' testimony. The court stated that Banks' last-minute attempt to deny even the transaction to which he had previously pleaded guilty "destroys completely his credibility." Thus, the court accepted as true the testimony Watters offered regarding Banks' involvement in other drug transactions. The court then applied section 1B1.3(a)(2) of the United States Sentencing Guidelines, which provides that acts that are part of the same course of conduct or common scheme or plan as the offense of conviction should be included and counted against the defendant for sentencing purposes. Adding the unindicted amounts testified to by Watters to the 473 grams Banks attempted to possess in the indicted transaction, the district court arrived at a total of 7.77 kilograms for purposes of determining Banks' base offense level. Although this quantity was less than that determined by the probation officer, the court found that the offense level remained at 34. Guidelines Sec. 2D1.1 provides that an offense involving at least three kilograms but less than ten kilograms of heroin results in a base offense level of 34.
 
 
 11
 In determining Banks' sentence, the district court also relied on the uncontradicted portions of the presentence report. One section of the report concluded that Banks had played an aggravating role in the offense. Banks did not challenge this finding at the sentencing hearing. The report suggested a two-level increase under Guidelines Sec. 3B1.1(c), which applies to a defendant considered to be an organizer, leader, manager or supervisor in a criminal activity. The two-level increase resulted in a total offense level of 36. The district court adopted these findings. The court then sentenced Banks to 235 months on the attempted possession count, and to 48 months on the count regarding unlawful use of a communication facility. The sentences were to run concurrently.
 
 II.
 
 12
 Banks contends that he should have been sentenced based on the quantity of 473 grams as opposed to the 7.77 kilograms arrived at on the basis of Watters' hearsay testimony. At the sentencing hearing, Banks' attorney conceded that "if the Court feels [the unindicted conduct is] part of the same transaction, we agree the case law says that, under conspiracy, he'd be guilty of all that and should be sentenced accordingly, but his position is that it's simply not true." The attorney was correct that the conduct can be considered under the Guidelines. The commentary to Guidelines Sec. 1B1.3 provides that, "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." Thus, the only issue before us on this first allegation of error is whether the hearsay testimony provided by Watters and relied upon by the district court is factually correct. Under the applicable standard of review, we are to reverse the district court only upon a showing that its factual findings were "clearly erroneous." United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989). We find no clear error here.
 
 
 13
 The Sixth Circuit has held, "The district court may consider hearsay evidence in determining sentence, but the accused must be given an opportunity to refute it, and the evidence must bear some minimal indicia of reliability in respect of defendant's right to due process." United States v. Robinson, 898 F.2d 1111, 1115 (6th Cir.1990) (citations omitted); see also United States v. Roberts, 881 F.2d 95, 105-106 (4th Cir.1989). These requirements have been satisfied here. Agent Watters was subject to crossexamination by Banks' attorney. Further, Banks himself testified and denied any involvement in any drug dealing whatsoever. Thus, there is no question that Banks was given an opportunity to refute the evidence provided by Agent Watters.
 
 
 14
 The requirement of minimal indicia of reliability was also satisfied. Agent Watters referred to the information provided by Mitchell as being "very reliable." Although Banks indicates that the quantities determined were based on speculation, the 900 grams Hurtle purchased and the 600 grams Watson purchased were confirmed when these informants were arrested with the amounts in their possession. At least three other informants stated that the amounts found on Hurtle and Watson were intended for Banks. The district court, after hearing Agent Watters' testimony and Banks' denials, concluded that Watters' testimony was "far more credible" than Banks'. This finding is not clearly erroneous.[2]
 
 III.
 
 15
 Banks argues that the district court erred when it approved an offense level increase of two levels, under Guidelines Sec. 3B1.1(c), finding that Banks had served as an organizer, leader, manager or supervisor in a criminal activity. Focusing only on the conduct charged, Banks asserts that he was the only criminally responsible person in the offense, since the other participants were undercover government agents. Banks never objected to the two-level increase for an aggravating role until this appeal.
 
 
 16
 To the extent that Banks' argument is based on a point Banks did raise, the challenge to the credibility of Watters' hearsay testimony, the argument is without merit. As stated above, we found no clear error in the district court's finding that Banks was involved in drug transactions other than the conduct charged. Thus, contrary to Banks' assertion, this evidence was properly considered in attributing to him an aggravating role.
 
 
 17
 Any other challenge has been waived because Banks, despite opportunities before and during the sentencing hearing, did not object to the two-level increase based on his aggravating role in the offense. Wren v. United States, 540 F.2d 643, 644 n. 1 (4th Cir.1975); see also United States v. Prichett, 898 F.2d 130, 131 (11th Cir.1990) ("Normally, we will not consider an argument raised for the first time on appeal. This rule is also applicable to sentencing proceedings."); United States v. Heilprin, 910 F.2d 471, 474 (7th Cir.1990) ("It is by now the clear rule in this circuit that a defendant who has been afforded ... opportunities to raise a sentencing challenge to the district court must avail herself of these opportunities, or risk waiver of the claim on appeal.").
 
 
 18
 Even if Banks had properly preserved this argument for review, he would not have prevailed. From the conduct testified to by Agent Watters, there is no doubt that Banks acted as an organizer, leader, manager or supervisor. He recruited accomplices to purchase the heroin. He also planned and organized the crime by deciding who would go to New York to make the purchases and when. Banks had all of the decision-making authority. Thus, this challenge to the two-level increase is wholly without merit.
 
 IV
 
 19
 The judgment of the district court is hereby
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Banks' testimony on direct examination at the sentencing hearing was as follows:
 Q Mr. Banks, you acknowledge the transaction that occurred in paragraph 12, which was the pick up of theflour; is that true?
 A Right, that's correct.
 Q You deny any--any other arrangements, purchases or sales of heroin?
 A That's correct.
 Q No one else ever purchased any heroin on your behalf?
 A Not on my behalf, no.
 Q And you never sold any heroin for any other party?
 A No, I have not.
 Q You never gave any money to anyone to purchase any heroin?
 A No, I have not.
 
 
 [2]
 Banks specifically attacked the information Weathers had provided, alleging that Weathers had a personal grudge against him. Banks stated that he had previously had an affair with Weathers' wife and that Weathers had threatened to take Banks down with him if he were ever convicted. We find no clear error in the court's finding that these allegations were not credible. But even if we accepted Banks' allegations and disregarded Weathers' information, thus subtracting 1.8 kilograms from Banks' total, there would still remain 5.9 kilograms. Under Guidelines Sec. 2D1.1, the base offense level is 34 when the amount of heroin involved is between three and ten kilograms. Therefore, the offense level would be the same