986 F.2d 1423
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant, Cross-Appellee,
v.
Robert BODBYL, Gerald Fisher, Daniel Moyer, James Ciganik,
Charles Brecken, Defendants-Appellees, Cross-Appellants.
 Nos. 92-1163 thru 92-1170 and 92-1193.
 United States Court of Appeals, Sixth Circuit.
 March 4, 1993.
 
 Before KEITH and BOGGS, Circuit Judges, and GIBBONS, District Judge.*
 PER CURIAM:
 
 
 1
 The United States appeals the sentences imposed by the district court upon the defendants-appellees in this case. Specifically, the government challenges the district court's application of U.S.S.G. § 2D1.4 to the conspiracy at issue. The Defendant James Ciganik cross-appeals the district court's denial of his motion for mistrial. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 This case involves a "reverse-buy" operation in which agents of the Drug Enforcement Administration ("DEA"), with the assistance of an informant, Willie Martins, agreed to sell a quantity of marijuana to Gerald Fisher. Over a period of a few months in 1990, negotiations took place among Martins, Fisher and Dominick Braccio of the DEA. The initial negotiations allegedly involved approximately 500 pounds of marijuana at a price of $1000/pound.
 
 
 3
 Martins testified that the government expected Fisher to purchase 200 pounds of marijuana at $200,000 at the first arranged sale on August 24, 1990. Fisher, however, arrived with only $30,000. Agent Braccio testified that the government did not proceed with the sale, hoping to consummate a larger sale at a later date.
 
 
 4
 On September 10, 1990, Fisher and Charles Brecken agreed to meet with agents to purchase a quantity of marijuana on the next day. Fisher informed Martins that he and several of his constituents were planning to combine their funds to acquire a significant amount of the controlled substance.
 
 
 5
 On September 11, 1990, Fisher, Brecken, Daniel Moyer, Donald Herbst, Robert Bodbyl, Steven Buck, Joseph Adams, and James Ciganik met at various times in a bar in Lowell, Michigan to discuss the purchase of the marijuana. At about 6:00 P.M., Agent Braccio took Moyer and Ciganik to the "stash house" to pick up the marijuana and arrested them upon their arrival. At the time of Moyer's arrest, he had $25,100 on his person, enough money to purchase approximately twenty-five (25) pounds of marijuana. Other agents then converged on the bar and arrested Bodbyl, Adams, Herbst, and Buck. Bodbyl had $4,295 in cash at the time of his arrest.
 
 
 6
 At about 9:00 P.M. that evening, the agents attended a pre-arranged meeting with Fisher in a grocery store parking lot. At this meeting, Fisher gave Agent Braccio a bag containing $60,350. Agent Braccio testified that, when Fisher handed him the money, Fisher stated, "I finally got it all together." The officers arrested Fisher at this point.
 
 
 7
 In the "reverse-buy" operation, a total of approximately $90,000 in cash was recovered. On May 16, 1991, a federal grand jury indicted nine defendants for conspiracy to distribute more than 100 kilograms of marijuana. A superseding indictment changed the phrase "more than 100 kilograms of marijuana" to "a quantity of marijuana." All of the defendants were tried on the conspiracy count, and five of the nine defendants were convicted.[2]
 
 
 8
 The sentencing court found as a factual matter that the defendants were only "capable" of purchasing ninety (90) pounds of marijuana. The government argued that the entire conspiracy involved the prospective sale of 500 pounds of marijuana and that, based on the relevant conduct provision in the sentencing guidelines, the court should sentence the defendants based on this figure. The court noted the fact that negotiations took place over a significant period of time and that the testimony presented involved varying amounts of marijuana. Finding no guidance in the superseding indictment, which refers simply to a "quantity" of marijuana, the court sentenced the conspirators based on their capability to purchase the marijuana. This timely appeal and cross appeal followed.
 
 II.
 
 9
 The government argues that the sentencing court committed clear error when it failed to apply the relevant conduct provision of the sentencing guidelines to the facts of this case. U.S.S.G. § 2D1.4 provides:
 
 Attempts and Conspiracies
 
 10
 (a) Base Offense Level: If a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed.
 
 
 11
 The Commentary to section 2D1.4 reads in pertinent part:
 
 
 12
 If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing. If the defendant is convicted of conspiracy, see Application Note 1 to § 1B1.3 (Relevant Conduct).
 
 
 13
 Application Note 1 to section 1B1.3 reads in pertinent part:
 
 
 14
 In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant. Because a count may be broadly worded and include the conduct of many participants over a substantial period of time, the scope of the jointly-undertaken criminal activity, and hence relevant conduct, is not necessarily the same for every participant. Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline. (emphasis added)
 
 
 15
 Note that the factual findings of the district court that underlie the ultimate sentence are reviewed only for clear error. See United States v. Robinson, 898 F.2d 1111, 1115-16 (6th Cir.1990).
 
 
 16
 During the sentencing hearing the district court stated:
 
 
 17
 This Court is of the opinion that each conspirator in this particular conspiracy was able to reasonably foresee that the conspiracy would be able to purchase 90 pounds of marijuana with the $90,000. The Court believes that all of the co-conspirators in this case knew or should have known or had reason to know that there was $90,000 involved and that $90,000 would purchase 90 pounds of marijuana.
 
 
 18
 The trial judge sat through the trial testimony, evaluated the information in the presentence reports, and made a factual assessment regarding the dimensions of this conspiracy. The conspiracy negotiations took place over several months and included discussions regarding the sale of disparate quantities of marijuana. During this time, there were failed attempts to make sales, and Agent Braccio testified that it was unclear whether the government was prepared to make a deal for a certain quantity of marijuana. The only concrete information regarding the extent of the conspiracy was the negotiated price ($1000/pound) and the $90,000 seized during the arrest of the co-conspirators. Applying the sentencing guidelines to the facts, the court determined that the several defendants in this case only possessed the capability to purchase ninety (90) pounds of marijuana. We cannot say that this factual finding was clear error.
 
 
 19
 The government also argues that the court committed legal error by stating that it would not refer to the relevant conduct provision in section 1B1.3. While the district court rejected the government's argument that it must utilize the relevant conduct provision, in the course of the sentencing proceedings, the district judge discussed the factors that are generally involved in a relevant conduct determination. Accordingly, we find no error warranting reversal.
 
 III.
 
 20
 The defendants collectively cross appeal the denial of a motion for mistrial following the cross examination of Ciganik. We review the denial of a motion for mistrial for abuse of discretion. United States v. Atisha, 804 F.2d 920 (6th Cir.1986), cert. denied, 479 U.S. 1067 (1987). We have defined this inquiry as "a definite and firm conviction that the trial court committed a clear error of judgment." Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989).
 
 
 21
 The following colloquy took place during the prosecution's cross examination of Ciganik:
 
 
 22
 Q: You went to the bar to meet Daniel Moyer. Correct?
 
 
 23
 A: That's correct.
 
 
 24
 Q: When you got there, did you talk to him and say, "Hey, Dan, why did you call me up? Why am I here with you at the bar?"
 
 
 25
 A: No. I didn't.
 
 
 26
 Q: He never mentioned to you anything about being involved in a drug deal?
 
 
 27
 A: He said he knew some people that were talking about selling some marijuana and asked if I was interested.
 
 
 28
 Q: How much did he--did he indicate how much he was going to buy or indicate how much he wanted to know if you wanted to buy?
 
 
 29
 A: No. That--that discussion never took place. It ended simply because I told him I had no money.
 
 
 30
 Q: Why would he have asked you if you wanted to buy some marijuana?
 
 
 31
 A: Because--I assume because he knows I smoke it.
 
 
 32
 Q: All right. Does he also know whether or not you sell it to other people? (emphasis added)
 
 
 33
 A: I would guess you'll have to answer Dan that question--ask Dan that question.
 
 
 34
 Mr. Phelan: Excuse me, Your Honor.
 
 
 35
 A: I don't know how to answer. I don't sell it to other people.
 
 
 36
 Mr. Phelan: Excuse me. Your Honor. That's not the issue, whether he sells it to other people. The issue is whether he's involved--sells it to anybody or not, but I think that's not the issue here. The issue is whether he's involved in this conspiracy. For the prosecutor to ask a question like that is highly unfair and prejudicial. It's not the issue.
 
 
 37
 The Court: Well, one of the instructions the Court will give to the jury is that the defendants are not on trial for any other matter other than what's the subject matter of the indictment. So if the defendant or witnesses or anybody else may have committed other crime, that's not before the jury. Only the crime of conspiracy, this conspiracy, if there is indeed a conspiracy, is before the jury....
 
 
 38
 Two days later, defense counsel made a motion for mistrial alleging prosecutorial misconduct. The defense claims that the prosecutor's question regarding Ciganik's alleged history of selling marijuana was prejudicial and necessitates a new trial.
 
 
 39
 The district court adequately addressed the issue by sustaining the objection and instructing the jury to disregard the lawyer's statements when looking at the evidence presented during deliberations. We also cannot say that this question, when viewed in context of the overall cross examination, amounted to prejudicial error. See United States v. Hickey, 917 F.2d 901, 905 (6th Cir.1990). Accordingly, the district court did not abuse its discretion when it denied the motion for mistrial.
 
 IV.
 
 40
 For the foregoing reasons, we AFFIRM the conviction and sentences imposed by the Honorable Benjamin Gibson, Chief Judge, United States District Court for the Western District of Michigan.
 
 
 
 *
 The Honorable Julia S. Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [2]
 Donald Herbst, Steven Buck, Joseph Adams, and Matthew Holden were acquitted