**UNITED STATES of America Plaintiff–Appellee,**

v.

**Patrick S. MARTIN Defendant–Appellant.**

No. 01–6414.

United States Court of Appeals, Sixth Circuit.

July 14, 2003.

———

Before KRUPANSKY, SILER, and GILMAN, Circuit Judges.

PER CURIAM.

Defendant–Appellant Patrick S. Martin ("Martin") challenged the district court's decision to enhance the length of his sentence for violation of 21 U.S.C. § 846, conspiracy to distribute a controlled substance, by two levels pursuant to U.S.S.G. § 2D1.1(b)(1). The district court concluded that Martin should have foreseen that his co-defendant had possession of a firearm. Upon appeal Martin has urged a reversal of the lower court's determination because it relied on defendant's proffered statement, putatively violating his plea agreement. However, because Martin's proffered statement was correctly introduced by the government during appellant's sentencing hearing, the district court did not err in its reliance on the statement, properly assigning a two-level enhancement to defendant's sentence for the constructive possession of co-defendant's firearm. Accordingly, this Court affirms the district court's determination.

## I. Background

On May 24, 2000, two officers of the Humboldt, Tennessee Police Department responded to a complaint from The Heritage Inn concerning the occupants in one of its motel rooms receiving frequent visitors while not allowing entrance to the motel's cleaning staff. Upon the officers' arrival, one of the occupants, Chad Brown, answered the door and gave the officers consent to enter the room he shared with appellant Martin, who was lying on the bed. Immediately upon entering the officers recognized various items instrumental for the manufacture of methamphetamine, including pseudoephedrine pills, drug cookbooks, starting fluid, lithium batteries, rubber gloves, a blender, coffee filters and lengths of tubing. After arresting Martin and Brown the officers secured a search warrant and found an additional array of drugs and drug paraphernalia under the bed, along with a nine-millimeter handgun.

Admitting his involvement in the production of methamphetamine, Martin agreed to provide a proffer to the government in connection with the case. In relevant part, the proffer agreement of June 13, 2001, signed by Martin and his counsel provided the following:

The government is willing to meet with you and your client under the following terms and conditions:

(2) Except as otherwise provided in paragraphs three, four, and five herein, in the above-captioned case and in any other prosecution that may be brought against your client by this Office, the government will not offer in evidence in its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by your client at the meeting;

(3) Notwithstanding paragraph two above, the government may use … (b) statements made by you or your client at the meeting and all evidence obtaining directly or indirectly from those statements for the purpose of cross-examination should your client testify, *or to rebut any evidence, argument or representations offered by or on behalf of your client in connection with the trial and/or at sentencing,* should any prosecution of your client be undertaken.

(emphasis added).

Subsequent to Martin's agreement to plead guilty to the conspiracy charge, the

probation office prepared a presentence report, which recommended a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm during the commission of the drug offense. The probation office considered Martin accountable through an implied constructive possession, maintaining that the appellant could have reasonably foreseen Brown's possession of the handgun. Martin objected to the enhancement asserting that the firearm belonged to, and was possessed by, the co-defendant.

On October 16, 2001 the district court conducted a sentencing hearing in which court and counsel discussed the issue of appellant's two-level sentencing enhancement for firearm possession. Appellant urged insufficient evidence to justify the two-level increase, arguing that he did not know, at the time of his arrest in the hotel room, that the gun was in the room under the bed. In disputing the propriety of the enhancement, Martin's counsel made the following remarks:

> First, again, as Your Honor may recall, Mr. Martin is not charged with the gun ... there's no dispute, I think factually, that the gun was Mr. Brown's.

> Again, Mr. Martin does not dispute that he knew generally, and in our proffer discussions with the government, I think he was clear on that, that he does not dispute that he knew *generally that Mr. Brown carried a gun and that at times he had that gun,* that he was aware that Mr. Brown owned that gun, the specific gun ...

> However, I think the facts of the arrest and the subsequent investigation by the government agents does not bring any proof forward that shows Mr. Martin knew at the time this was going on, at the time he was in the hotel room there where they were taken into custody that the gun was there because it's

clear when they were arrested, the gun was under a bed.

(emphasis added).

In response, the government urged the court to retain the enhancement, as Martin knew of Brown's resolve to carry the handgun. Counsel discussed Martin's presence on the bed under which the weapon was later found, along with drug paraphernalia necessary for making methamphetamine. the admitted and sole purpose for appellant's and co-defendant's presence in the motel room. Counsel then made the following observation:

> In this situation, Your Honor, Ms. Smothers [defense counsel] is correct. Mr. Martin ... did acknowledge during the course of the proffer that he was aware of the gun. The portion of the proffer statement that relates to the gun that she made reference to reads as follows:

>> The weapon belonged to Chad. Chad has just got the weapon. Had it during the cook the weekend before the arrest. Chad kept a silver 9mm with him until it was stolen, and he got the blue steel 9mm then. *Chad always kept a pistol on him.*

> Okay? So with that statement that Ms. Smothers referenced during the proffer, it is clear that it is reasonably foreseeable in the mind of Mr. Martin that Mr. Chad Brown would have a firearm.

(emphasis added).

In ruling on Martin's objection to the enhancement, the district court explained that co-defendant's possession of the firearm was reasonably foreseeable by Martin. The court determined to retain the firearm enhancement to Martin's sentencing,

> because the gun was under the bed in a room shared by Mr. Martin, because the gun was under the bed with all the other paraphernalia, the pseudoephedrine blis-

ter packs, the precursors, the methamphetamine itself, perhaps other items, it seems clear to me that Mr. Martin knew that gun was there, particularly in view of the fact that he stated that he was aware that Mr. Brown carried a gun and that he knew that Mr. Brown had the gun. So it seems that the two-point assessment for the firearm was properly applied.

The district court, additionally, granted the government's motion under U.S.S.G. § 5K1.1 for a three-level downward departure based on Martin's substantial assistance, subsequently sentencing appellant to sixty-three months of imprisonment, the low end of a resultant Guideline range of 63–78 months.[1]

## IV. ANALYSIS

### A. Standard of Review

This court reviews *de novo* district court decisions based on legal interpretations of the Sentencing Guidelines. *United States v. Smith*, 196 F.3d 676, 679 (6th Cir.1999). Plea agreements are contractual in nature. In interpreting and enforcing them this court applies traditional principles of contract law. *United States v. Robison*, 924 F.2d 612, 613 (6th Cir.1991); *United States v. Wells*, 211 F.3d 988, 994 (6th Cir.2000). Questions regarding the content of the plea agreement are questions of fact which this court reviews for clear error. *Id.* This court reviews for clear error the district court's finding that the defendant pos-

sessed a firearm during a drug crime within the meaning of U.S.S.G. § 2D1.1(b). *United States v. Maliszewski*, 161 F.3d 992, 1017 (6th Cir.1998).

### B. Appellant's proffer statement

The appellant has contended that U.S.S.G. § 1B1.8(a) restrains the use of self-incriminating information provided pursuant to a plea agreement. Accordingly, this court has observed in *U.S. v. Jarman*, 144 F.3d 912, 914 (6th Cir.1998), that § 1B1.8(a) "unquestionably forbids the government to influence the sentencing range by disclosing revelations made by a defendant in the course of cooperation as required by a plea agreement." (*citing United States v. Miller*, 910 F.2d 1321 (6th Cir.1990), *cert. denied*, 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991)).

In relevant part, § 1B1.8(a) provides that self-incriminating "information shall not be used in determining the applicable guideline range" when a defendant's cooperation is predicated on an agreement with the government that self-incriminating information "provided pursuant to the agreement will not be used against the defendant." [2] In urging a finding of judicial error, the appellant has relied upon the court's discussion in *United States v. Robinson*, 898 F.2d 1111 (6th Cir.1990), establishing:

> The district court must ... set out with particularity the extent to which he considered, if at all, information given which

---

1. The three-level departure brought Martin's total offense level to twenty-two. Combined with a criminal history category of IV, Martin's resultant Guideline range was 63–78 months. Pursuant to Martin's June 29, 2001 plea agreement, the government recommended the low end of the Guidelines range.

2. In total, § 1B1.8(a) reads:
 Where a defendant agrees to cooperate with the government by providing infor-

mation concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.
U.S.S.G. § 1B1.8(a).

might be subject to § 1B1.8(a) limitations in respect to the departure. The district court should separate the cooperating information given by defendant which may be used for sentencing purposes and that part, if any which cannot be used.

*Id.* at 1118.

Appellant's contention that the district court considered evidence from the defendant's proffered statement, contrary to *Robinson,* in determining the sentencing range exhibits an unreasonable denial of the exceptions clearly applicable in the instant case. Section 1B1.8(a) of the Sentencing Guidelines provides that the government may not provide self-incriminating information obtained pursuant to the agreement "except to the extent provided in the agreement." U.S.S.G. § 1B1.8(a). Martin's plea agreement barred the government from using any of his statements in connection with his sentencing proceeding *except* "to rebut any evidence, argument or representations offered by or on behalf of" appellant at sentencing. As the record has indicated, Martin's statements were used in exactly that manner, i.e., as rebuttal evidence, obviating the need for the district court, in compliance with the directive in *Robinson,* to set out with particularity the cooperating information used for sentencing purposes.

At the sentencing hearing, Martin's counsel referred to the proffered statement and then mischaracterized the import of Martin's proffered comments regarding his specific knowledge that Brown *always* carried the nine-millimeter gun found by the police under the motel room bed. Martin's counsel argued before the court that Martin's proffered statements indicated only that he had general knowledge of his co-defendant's firearm and should not, therefore, be held accountable under § 2D1.1 for constructive possession.

Given that context, the government's use of the appellant's proffered statement fits within the exception provided in the agreement both appellant and his counsel signed.

### D. *Constructive possession of the handgun*

■ Whether appellant could reasonably have foreseen possession of a firearm by his co-defendant rests on the record evidence. The appellant's admissible proffered statement, demonstrating specific and certain knowledge that co-defendant Brown *always* carried a nine-millimeter handgun served to augment and substantiate the physical evidence in which the gun was found amongst a panoply of drug paraphernalia and ingredients for manufacturing the methamphetamine, the admitted reason for appellant's presence in the motel room. *See United States v. Williams,* 176 F.3d 301 (6th Cir.1999).

The Sentencing Guideline contemplates both actual and constructive possession of a firearm during the commission of a crime. As the application notes observe: "[T]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." U.S.S.G. § 2D1.1 comment. (n. 3); *see also United States v. Moreno,* 899 F.2d 465, 470 (6th Cir.1990), *cert. denied,* 503 U.S. 948, 112 S.Ct. 1504, 117 L.Ed.2d 643 (1992); *United States v. Cochran,* 14 F.3d 1128, 1132 (6th Cir.1994).

For the § 2D1.1 sentencing enhancement to apply, the government must prove that (1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense. *United States v. Hill,* 79 F.3d

1477, 1485 (6th Cir.), *cert. denied,* 519 U.S. 858, 117 S.Ct. 158, 136 L.Ed.2d 102 (1996). Constructive possession is established if the defendant had "ownership, or dominion, or control over the [firearm] itself, or dominion over the premises where the [firearm] is located." *United States v. Sanchez,* 928 F.2d 1450, 1460 (6th Cir. 1991); *United States v. Dunlap,* 209 F.3d 472, 479 (6th Cir.2000) (imputing constructive possession of firearms to defendant even though he lacked actual knowledge because he exercised access, control and/or dominion over the premises in which drug activity admittedly occurred); *see also United States v. Owusu,* 199 F.3d 329, 347–48 (6th Cir.2000). Once the government proved possession, "a presumption arises that such possession was connected to the offense," and the burden shifted to the defendant to prove that "it is clearly improbable that the weapon was connected to the offense." U.S.S.G. § 2D1.1 comment. (n.3). In determining whether a defendant has met his or her burden, this court considers factors such as the proximity of the gun to the drugs, the type of gun used, whether the gun was loaded, and any alternative purpose offered to explain the gun's presence. *See United States v. Hill,* 79 F.3d at 1486.

In concluding that a defendant is accountable for a co-defendant's possession of a gun, this Circuit requires only that the defendant knew it was reasonably probable that his co-conspirator would be armed. *United States v. Miggins,* 302 F.3d 384, 391 (6th Cir.2002) (observing that possession may be actual or constructive), *cert. denied,* 537 U.S. 1130, 123 S.Ct. 909, 154 L.Ed.2d 817 (2003); *United States v. Hough,* 276 F.3d 884, 894 (6th Cir.2002) (circumstantial evidence is sufficient to prove constructive possession); *United States v. Nichols,* 979 F.2d 402 (6th Cir. 1992), *aff'd,* 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) (finding that sec-

tion 2D1.1 does not demand scienter); *U.S. v. Bender,* 265 F.3d 464 (6th Cir.2001) (concluding that possession of a firearm under section 2D1.1 is attributable to a co-conspirator not present at the commission of the offense as long as it constitutes reasonably foreseeable conduct).

In the instant case, the professed certainty with which Martin knew Brown would bring his handgun to the motel room, while he and the appellant spent several days manufacturing drugs, provided the reasonable foreseeability necessary to ascribe constructive possession of the firearm to the appellant. The government provided the sentencing court with sufficient evidence that both Brown and Martin conspired to manufacture methamphetamine in the motel room where the weapon and drug manufacturing material were found. Because Brown's possession of the nine-millimeter handgun was reasonably foreseeable by appellant, possession of the weapon was properly imputed to Martin.

Finally, the location of the firearm under the bed does not alter the analysis. The gun was not inaccessible and was placed among the ingredients appellant worked with to create the methamphetamine. *United States v. Hough,* 276 F.3d at 894 (finding enhancement applied where government retrieved a nine-millimeter handgun from under defendant's bed and found drug paraphernalia on premises leased to the defendant); *U.S. v. Bender,* 265 F.3d at 474 (sufficient for enhancement that two handguns were found in the bedroom closet, and that various drug paraphernalia was present in the bedroom).

Although this court has found that a gun located within inches of contraband narcotics does not require enhancement of a sentence, *see United States v. Peters,* 15 F.3d 540, 542 (6th Cir.1994) (finding *no* error when the district court declined to

enhance the sentence for a handgun found in a drawer below a 'baggie' of crack), the proximity of the firearm alone does not determine the propriety of the enhancement. *See United States v. Chalkias,* 971 F.2d 1206, 1217 (6th Cir.1992) (upholding the enhancement where an unloaded submachine gun was found in a box in the basement rafters of a dwelling where drugs were stored). Relying on the analysis in *Chalkias,* the weapon in the instant case was not in storage, but readily accessible in a *place of concealment,* under the motel room bed.

Accordingly, we affirm the district court's proper application of the two-level enhancement to Martin's sentence for the constructive possession of a firearm.